[No. F008211. Fifth Dist. Aug. 3, 1987.]

JOHN B. WILSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF
MODESTO, Respondents

COUNSEL

Airola, Williams & Dietrich and Roy J. Otis for Petitioner.

Baldwin & Snapp and R. D. Baldwin for Respondents.

OPINION

HAMLIN, Acting P. J.—John B. Wilson (petitioner) sought and was granted a writ of review after the Workers' Compensation Appeals Board

(Board) denied Wilson's petition for reconsideration and affirmed the decision of the workers' compensation judge that petitioner's injury did not arise out of and in the course of his employment by the City of Modesto (City).

■ The sole issue this court is required to decide is whether petitioner's injury to his left ankle, that occurred while petitioner was running off duty to keep himself in physical condition to pass the tests required by City to remain a member of the special emergency reaction team (SERT), a tactical unit of City's police department, arose out of and in the course of his employment. We will conclude that it did and annul the Board's decision.

Petitioner was at all relevant times employed by City as a police officer member of SERT. Membership in SERT is voluntary for police officers, and they receive no extra pay or benefits for their participation. To be a member of SERT, each officer is required to pass physical tests four times a year. One such test requires members over 35 years old to run 2 miles in 17 minutes. Other tests call for a minimum number of push-ups, pull-ups and sit-ups. Officers who do not belong to SERT are not required to undergo these physical tests.

The injury that is the subject of this review occurred on June 27, 1984, after petitioner completed his patrol shift, changed clothes and drove to the Modesto Junior College track. While running there, petitioner injured his left ankle. He contends his injury arose out of and in the course of his employment.

The workers' compensation judge[1] found that petitioner was not ordered to work out in order to qualify for membership in SERT. His supervisor merely suggested that petitioner needed to keep in shape if he expected to pass the tests. The judge believed this case was controlled by the rule set out in *City of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1979) 91 Cal.App.3d 759 [154 Cal.Rptr. 379]. Reconsideration of the workers' compensation judge's decision was denied. This petition for writ of review followed.

DISCUSSION

Since the facts in this case are not in dispute, the court deals only with questions of law. ■ On those, the court is not bound by the Board's

---

[1] After petitioner requested reconsideration of the first adverse decision by a workers' compensation judge, the Board granted reconsideration; a de novo hearing was held before a different judge. The result was the same. We refer only to the decision of the judge on reconsideration.

decision. (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864-865 [101 Cal.Rptr. 105, 495 P.2d 433].)

 Although petitioner urges alternative grounds to support his contention that his injury arose out of and in the course of his employment, we address only his argument based on Labor Code section 3600, subdivision (a)(8)[2] in effect at the time of petitioner's injury. It provided in pertinent part:

"(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

". . . . . . . . . . . . . . . . . . .

"(8) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, *except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . . .*" (Italics added.)[3]

 The legal question here, as in *Ezzy* v. *Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 [194 Cal.Rptr. 90], is whether petitioner's participation in the off-duty athletic activity was a reasonable expectancy of his employment by City. As the *Ezzy* court stated:

"[The employer] erroneously assumes that the question of 'reasonable expectancy' is one of fact. While factual findings form the foundation upon which a court bases its determination that a 'reasonable expectancy' exists, the question requires a conclusion derived from those facts which is itself *legal* in nature. Furthermore, the question of 'reasonable expectancy' [within the meaning of section 3600, subdivision (a)(8)] is but a subset of the ultimate issue—whether the applicant's injury arose out of and in the course of her employment.

---

[2] All further statutory references are to the Labor Code unless otherwise indicated.

[3] Section 3600, subdivision (a)(8) was originally added to section 3600 as subdivision (h) (Stats. 1978, ch. 1303, § 5, p. 4357). In 1982, subdivision (h) of section 3600 was redesignated as subdivision (a)(8) (Stats. 1982, ch. 922, § 4, p. 4948). After the 1986 amendment to section 3600 (Stats. 1986, ch. 755, § 1, pp. 137-138) substituting a new subdivision (a)(8), former subdivision (a)(8) was renumbered subdivision (a)(9).

"`. . . . . . . . . . . . . . . . . . .

". . . It is our view that the test of 'reasonable expectancy of employment' in the context of the case at bar consists of two elements: (1) whether the employee subjectively believes his or her participation in an activity is expected by the employer, and (2) whether that belief is objectively reasonable." (*Id.* at pp. 259-260.)

Additionally, this court pointed out in *Aetna Casualty & Surety Co.* v. *Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 922, 931 [232 Cal.Rptr. 257]:

"Hence, *Meyer* [*Meyer* v. *Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 1036 (204 Cal.Rptr. 74)] interpreted the 'express or implied' language of section 3600, subdivision (a)(8),[4] in conjunction with the second prong developed in the *Ezzy* test—the objective reasonableness of the employee's belief; evidence demonstrating and proving express or implied pressure upon the employee serves to establish the objective reasonableness of that employee's belief that he or she was required to participate in the off-duty activity. [¶] This interpretation of the code section, although perhaps inconsistent with its disjunctive form, is certainly consistent with the intent of the Legislature. The *Meyer* reading of the code section definitely effectuates the lawmakers' desire to remove indirect employer pressure upon employees regarding off-duty recreational activities by making injuries during such activities compensable in the event indirect coercion is found."

 With the legal principles established, we turn to the facts before us. First, we consider whether petitioner subjectively believed his participation in the athletic activity was expected by City. An employee satisfies this burden if he or she believed his or her participation was required. (See *Aetna Casualty & Surety Co.* v. *Workers' Comp. Appeals Bd., supra,* 187 Cal.App.3d at p. 932.) This lax standard was easily met below; petitioner stated during his deposition that both of his superiors told him off-duty conditioning would be necessary to maintain the SERT physical qualifications. Petitioner also stated, "[o]nce I was accepted by the S.E.R.T. Team, I knew that I had to maintain physical standards and to work out." This testimony was sufficient to satisfy the subjective prong of the dual test set forth in *Ezzy, supra*.

Second, we consider whether petitioner's belief that his participation was expected by his employer was objectively reasonable. Courts applying this

---

[4] Now subdivision (a)(9). See footnote 3, *ante*.

test analyze and weigh factors evidencing implied employer approval or encouragement. For instance, in *Ezzy* v. *Workers' Comp. Appeals Bd.*, *supra*, 146 Cal.App.3d 252, the petitioner was a law clerk and received injuries during an interoffice softball game. In deciding that the petitioner reasonably believed she was expected to participate, the court stressed various facts: the law firm paid for all sporting equipment as well as postgame entertainment; the firm received a substantial benefit through improved office cooperation and camaraderie; the petitioner's participation was not voluntary due to internal pressure on the female staff to take part; and her position as a part-time law clerk, low on the hierarchy of the legal totem pole, brought increased pressure to bear.

Likewise, in *Smith* v. *Workers' Comp. Appeals Bd.* (1987) 191 Cal.App.3d 127 [236 Cal.Rptr. 248], this court considered analogous factors in deciding whether fatal injuries a teacher sustained at a school club picnic were compensable. We noted on the one hand that decedent drove his own car to the event; he was not the club's official faculty sponsor nor did he receive compensation; and he did not accumulate adjunct/extracurricular hour credit for his presence. On the other hand, the school benefited through the betterment of student-teacher relationships; teachers were encouraged to participate in school club activities and were in fact evaluated annually on this basis; math club funds were used to purchase the food and refreshments; and students were required to submit parental permission slips. We found these latter factors compelling and concluded that club participation was impliedly required by Smith's employer and therefore decedent's death was compensable.

Here, petitioner was not compensated for his off-duty running and other conditioning. Nor did City provide equipment, facilities or supervision for petitioner's off-duty workouts. Only during the monthly training sessions during working hours were SERT fatigues worn and supervision provided. By stressing the noticeable absence of these facts indicative of employer control or encouragement, the workers' compensation judge did not find compensability.[5] However, we believe the facts on which he relied are not determinative. SERT was a specially funded, trained, and equipped unit specifically formed to handle highly dangerous criminal situations. Because of these demands, members were required to maintain a level of physical

---

[5] As the workers' compensation judge wrote, "Although the S.E.R.T. training required [petitioner] to demonstrate physical agility, there was no requirement he prepare for the training, or in any particular way, . . . The jogging activity when applicant sustained an injury, was not done on the Employer's premises; it was not done under the Employer's control; nor was there any special benefit to the Employer, . . . [¶] Because applicant's jogging activity was not required by the Employer, nor encouraged by the Employer, I conclude the injury is not compensable."

agility not required of officers on the regular force. Indeed, Sergeant Sale testified that SERT physical requirements were more demanding than those for regular patrol officers, that the monthly training days were not sufficient to maintain the physical conditioning, and that he told SERT members of the necessity for off-duty exercise in order to qualify for the tests. And, of course, the initial qualifying test and the supplemental tests four times a year were indications that physical fitness was an absolute condition precedent to SERT membership. Hence, physical fitness is indisputably a requirement of membership in that tactical unit, and all members were made aware that off-duty conditioning activities were necessary to pass the tests for membership. It would be completely unrealistic to conclude that off-duty running was not expected of any member over 35 years of age who wanted to pass City's test of running 2 miles in 17 minutes or less.

Moreover, while participation on SERT is voluntary and failure to qualify is not detrimental to an officer's career, these facts do not in any way detract from the benefit to City from the use of SERT. Both *Ezzy, supra,* and *Smith, supra,* stressed the benefit to the employer as a factor supporting compensability. Here, the tactical unit was used in some 60 instances to handle difficult criminal situations that could not be effectively and safely alleviated by the regular police force. Clearly, City received a marked advantage through more thorough and efficient law enforcement.

*City of Los Angeles* v. *Workers' Comp. Appeals Bd., supra,* 91 Cal.App.3d 759, which the workers' compensation judge believed to be controlling, does not persuade us otherwise. There, a police officer for the City of Los Angeles (Noetzel) was injured while weight lifting at home. He was preparing for a departmentally required physical agility test. The court denied compensation for the officer's injury, stressing that his weight-training program was merely a regimen designed for voluntary self-improvement. The court noted, "Although the police department required Noetzel to take a physical agility test, there was no requirement that he prepare for it in any particular way or at all. The activity was not on the employer's premises, or under the employer's control, nor was there any benefit to the employer except to the extent that this particular individual might improve his proficiency." (*Id.* at p. 764.)

*City of Los Angeles* v. *Workers' Comp. Appeals Bd., supra,* is distinguishable from the instant case principally because section 3600, subdivision (a)(8) had not been enacted at the time that case was decided. Until the enactment of subdivision (a)(8), section 3600 contained no specific reference to athletic or recreational activities. The court in *Ezzy* v. *Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d 252 concluded that in enacting section 3600, subdivision (a)(8):

"[I]t was the Legislature's intent to eliminate from the workers' compensation scheme *only* those injuries which were remotely work-connected. The use of such terms as 'reasonable expectancy' and 'impliedly required' in section 3600, subdivision (a)(8) is evidence that the Legislature recognized the potential use by employers of indirect means to encourage participation in an activity, and that such indirect encouragement changes the voluntary character of such participation. The Legislature intended that injuries occurring under such circumstances should be considered work-connected, and must fall within the coverage of the workers' compensation scheme." (*Id.* at p. 263.)

Thus it is clear that the basis of our conclusion that petitioner's off-duty injury suffered while conditioning himself to pass City's running test for continued membership in SERT was not available for consideration by the court that denied compensation for the injury resulting from off-duty conditioning in *City of Los Angeles* v. *Workers' Comp. Appeals Bd., supra,* 91 Cal.App.3d 759. Consequently, the workers' compensation judge incorrectly believed that case was controlling on the ultimate issue to be decided in this case.

Since we have concluded that both prongs of the test of "reasonable expectancy of employment" established in *Ezzy* v. *Workers' Comp. Appeals Bd., supra,* 146 Cal.App.3d 252 are satisfied in this case, the Board's decision is annulled and the cause is remanded to the Board for proceedings consistent with the views expressed herein.

Ballantyne, J., and Reid, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.