[No. C050085. Third Dist. Jan. 27, 2006.]

CITY OF STOCKTON et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and SEAN
JENNEIAHN, Respondents.

1514

COUNSEL

Law Office of Joseph J. Barlupo and Hector M. Jorrin for Petitioners.

Mastagni, Holstedt, Amick, Miller, Johnsen & Urhammer, Frolan R. Aguiling and Michael Amick for Respondent Sean Jenneiahn.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**SCOTLAND, P. J.**—This case poses the question whether a police officer who injured his leg while off duty, playing in a pickup game of basketball at a private facility, is entitled to workers' compensation benefits.

A workers' compensation judge (WCJ) concluded the injury arose out of and occurred in the course of the police officer's employment because, in the WCJ's view, the officer reasonably believed that "his participation in cardio-vascular activities such as basketball were [*sic*] expected by his employer." In a two-to-one decision, the Workers' Compensation Appeals Board denied the employer's petition for reconsideration.

The police officer's employer then petitioned for, and we issued, a writ of review. We now shall annul the award of workers' compensation benefits.

As we will explain, when an employee is injured during voluntary, off-duty participation in a recreational, social, or athletic activity, Labor Code section 3600, subdivision (a)(9) provides that the injury is not covered by workers' compensation, unless the activity was "a reasonable expectancy of" the employment or it was "expressly or impliedly required by" the employment. General assertions that the employer expects an employee to stay in good physical condition, and that the employer benefits from the employee's doing so, are not sufficient for worker's compensation coverage since that would impose virtually limitless liability for any recreational or athletic activity in which the employee chooses to participate—a result that would run afoul of the limitation set forth in Labor Code section 3600, subdivision (a).

Turning to the facts of this case, we conclude the evidence does not support a finding that Officer Sean Jenneiahn subjectively believed that his employer expected him to engage in an occasional pickup game of basketball in order to stay in shape. In any event, such a subjective belief would have been objectively unreasonable under the circumstances here. Thus, it cannot be said that the specific activity during which he was injured was a reasonable expectancy of, or was expressly or impliedly required by, his employment. For this reason, the Workers' Compensation Appeals Board erred in concluding that Jenneiahn's injury was covered by workers' compensation.

## FACTS

Sean Jenneiahn is employed as a police officer by the City of Stockton (the City). He engages in additional employment by officiating at high school basketball and baseball games.

The City's police department has a regulation stating that police officers shall maintain good physical condition. However, after an officer is hired, the department does not require any physical fitness tests or examinations. According to the record in this case, no officer has ever been fired or otherwise disciplined for not being physically fit.

Officer Jenneiahn was not aware of the regulation requiring physical fitness, although he remembered that the application for employment said an officer must be physically fit to do the job. Some of his training officers advised him to stay in shape, and Jenneiahn believed that officers should remain physically fit. He did so by jogging and running, doing cardiovascular workouts, and playing basketball and softball.

The City's police officers are not given time to work out while on duty. However, in the basement of the police department, the City maintains a gymnasium and workout facility that is available for officers' use. Officer Jenneiahn did not use the department's facility because he preferred to work out elsewhere when he was not on duty.

While off duty and playing in a basketball game, Officer Jenneiahn hyperextended his leg and suffered a fracture of the tibia plateau.

The facility where the injury occurred is owned and operated by the Stockton Police Officers' Association (SPOA), not by the City. The facility, which has a gymnasium, kitchen, bar, pool tables, basketball court, barbeque facility, and racquetball court, is used for a variety of social, recreational, and athletic activities. SPOA members can use it whenever they want as part of their union dues.

When the SPOA facility opened, the City's Chief of Police issued a special order strictly prohibiting officers from visiting the facility for any reason while on duty, including taking meal breaks or using the restrooms.

The basketball game in which Officer Jenneiahn was playing when he was injured was not an employer-sponsored event. In fact, it was not a scheduled event at all. The game was described as a pickup game; Jenneiahn went to the SPOA facility and got into a game with others who were there. At the time, he had not been playing very much basketball. He was staying in shape by running and officiating at basketball games. He testified that he would have been in shape regardless of whether he played basketball.

## DISCUSSION

### I

The question whether workers' compensation benefits should be received for injuries suffered by an employee during off-duty recreational or athletic pursuits has arisen often.

In *Liberty Mut. Ins. Co. v. Ind. Acc. Com.* (1952) 39 Cal.2d 512 [247 P.2d 697], the claimant was a live-in employee at a recreational resort. When not performing his duties, he could participate in any of the recreational activities available in the area, including swimming in a pool created by a dam across a stream. He was injured while diving into the pool. Because the pool was located beyond the area under its control, the employer could not prohibit the employee from swimming in the pool. (*Id.* at pp. 515–516.) The California Supreme Court concluded the injury was not covered by workers' compensation because it occurred while the employee "was engaged in a personal recreational activity on his own free time in an area without the orbit of his employment and beyond the control or dominion of his employer." (*Id.* at p. 517.) The court observed that to hold otherwise would make compensation coverage virtually limitless. (*Id.* at p. 518.)

The same conclusion was reached in *Fireman's Fund Etc. Co. v. Ind. Acc. Com.* (1952) 39 Cal.2d 529 [247 P.2d 707] (hereafter *Fireman's Fund*), where the claimant, a live-in cook and housekeeper, was injured during a walk. It was her custom to take short walks once or twice a day, and she had been advised to do so by the employer's doctor. On the day of the injury, she informed her employer that she was going for a walk. The employer told the employee not to go too far. (*Id.* at pp. 530, 531.) The Supreme Court found the injury was not compensable because it occurred while the employee was "walking on a public road as an act of recreational diversion of her own free choice and when off-duty from her work." (*Id.* at p. 535.) The court rejected her argument that she "was following her medical adviser's recommendation as to a suitable exercise, and so was conditioning herself to perform better the duties of her employment." (*Id.* at p. 534.) The court explained: "[I]f such theory should be adopted as sufficient to establish the necessary causal connection with the employment, then any injury sustained by an employee in a recreational activity would be compensable." (*Ibid.*)

■ In *United Parcel Service of America, Inc. v. Industrial Accident Commission* (1959) 172 Cal.App.2d 73 [342 P.2d 41], the Court of Appeal concluded that an employee who was injured in a foot race at a company

picnic was not entitled to worker's compensation because "the intangible value of improvement in the employee's health or morals that is common to all kinds of recreation and social life" is not sufficient to make an injury compensable. (*Id.* at pp. 74, 75, 76–77; see also *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 193, 197 [173 Cal.Rptr. 778].)

■  And in *City of Los Angeles v. Workers' Comp. Appeals Bd.* (1979) 91 Cal.App.3d 759 [154 Cal.Rptr. 379] (hereafter *City of Los Angeles*), the Court of Appeal concluded that worker's compensation did not apply to injuries suffered by a police officer while weightlifting at home in preparation for a physical fitness test. (*Id.* at pp. 761, 766.) The Workers' Compensation Appeals Board had found compensation was appropriate because the officer was required to undergo a physical fitness test for which he was preparing. (*Id.* at p. 762.) The Court of Appeal disagreed, stating: "There is a wide variety of occupations in which it is necessary for the employee to maintain or improve physical or mental proficiency in order to continue employment or qualify for advancement. The variety of activities which might be thought to serve those purposes is infinite. When the self-improvement activity is voluntary, off the employer's premises and unregulated, the employer can have little knowledge of the physical risks involved, and no opportunity to minimize or protect the employee against such risks. These circumstances strongly militate in favor of classifying such activities as personal in the absence of some connection with employment other than hoped-for personal improvement. The fact that the employer tested the fitness of the employee periodically should not by itself make a self-improvement program an industrial activity." (*Id.* at p. 764, fn. omitted.)

■  In 1978, the Legislature acted on the question by adding to Labor Code section 3600 a provision that is now subdivision (a)(9) of the section.[1] (Further section references are to the Labor Code, with references to subdivision (a)(9) of section 3600 cited simply as subdivision (a)(9).) Section 3600 provides generally that an injury is covered by worker's compensation benefits when, at the time of the injury, "the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" and "the injury is proximately caused by the employment, either with or without negligence." (§ 3600, subd. (a)(2) & (3).) However, subdivision (a)(9) sets forth a limitation. To be compensable,

---

[1] The provision that is now subdivision (a)(9) was added as subdivision (h) of section 3600. (Stats. 1978, ch. 1303, § 5, pp. 4262–4263.) Legislation in 1982 changed the provision to subdivision (a)(8) of section 3600. (Stats. 1982, ch. 922, § 4, p. 3366.) It became subdivision (a)(9) in 1986 legislation. (Stats. 1986, ch. 755, § 1, p. 2474.)

the injury must be one that "does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment."

■ The statutory scheme was construed in *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 [194 Cal.Rptr. 90] (hereafter *Ezzy*). The Court of Appeal noted that what is now subdivision (a)(9) was added by the Legislature in reaction to decisions that had allowed workers' compensation for injuries suffered by employees during off-duty activities where the activities "were reasonably foreseeable or expectable in the work setting." (146 Cal.App.3d at p. 261.) The court concluded the subdivision was "intended to draw a brighter line delimiting compensability by replacing the general foreseeability test with one of 'reasonable expectancy' of employment" (*ibid.*), a test that is met when the employee subjectively believes his or her participation in the activity is expected by the employer, and the belief is objectively reasonable. (*Id.* at p. 260.)

The claimant in *Ezzy* was injured while playing in a regularly scheduled league softball game sponsored by her employer's law firm. (*Ezzy, supra,* 146 Cal.App.3d at p. 257.) While the Court of Appeal considered the case to be close, it found the injury was compensable because (1) the claimant, a part-time law clerk in her second year of law school, was particularly vulnerable to pressure or suggestion that she play, (2) she felt she was essentially "drafted" to play when a partner handed her a t-shirt and schedule and told her that the team would see her at the next game, (3) female employees were pressured to play so the team would not forfeit due to the league's requirement that a team have four women on the field at all times during a game, (4) the firm paid for all equipment, T-shirts, and post-game refreshments, and hosted an awards banquet for players, (5) the firm benefited through improved office cooperation, spirit, morale, and camaraderie, and (6) the firm had not posted or read to its employees the provisions of what is now subdivision (a)(9). (*Id.* at pp. 257–258, 263–264.)

In *Hughes Aircraft Co. v. Workers' Comp. Appeals Bd.* (1983) 149 Cal.App.3d 571 [196 Cal.Rptr. 904] (hereafter *Hughes Aircraft*), the Court of Appeal further considered what is now section 3600, subdivision (a). Noting legislative history shows the provision's purpose is "to ensure that an employer could provide voluntary off-duty recreational, social and athletic benefits for his employee's personal use without also bearing the expense of insuring the employee for workers' compensation benefits during participation in those activities" (149 Cal.App.3d at p. 575), the court found that the Legislature intended to

exclude from coverage any injuries that are only remotely work related, so as not to deter employers from subsidizing, sponsoring, or encouraging personal employee activities of a recreational or social character. (*Ibid.*)

The claimant in *Hughes Aircraft* suffered a slip-and-fall injury while attending an annual off-premises, off-duty holiday party that was subsidized 90 percent by the employer. The employer organized the event to foster an atmosphere of togetherness, but attendance was wholly voluntary. An employee's position would not be enhanced by attendance, and there would not be any adverse consequence if an employee did not attend. (*Hughes Aircraft, supra,* 149 Cal.App.3d at pp. 572, 573.) The Workers' Compensation Appeals Board awarded compensation based solely on its view that the employer obtained a direct benefit from the party. (*Ibid.*) The Court of Appeal held "it was incorrect as a matter of law to conclude that the existence of a direct benefit to the employer could be used to circumvent the express terms" of now subdivision (a)(9). (149 Cal.App.3d at p. 575.)

Since *Hughes Aircraft*, a number of published decisions applying what is now subdivision (a)(9) have found that injuries suffered in recreational, social, or athletic settings were covered by workers' compensation.

In *Smith v. Workers' Comp. Appeals Bd.* (1987) 191 Cal.App.3d 127 [236 Cal.Rptr. 248] (hereafter *Smith*), a math teacher suffered fatal injuries while windsurfing at a math club picnic. (*Id.* at pp. 129–130.) The Court of Appeal considered the question "extremely close," but concluded that certain factors tipped the balance to compensability: (1) the teacher was classified as temporary and, thus, was vulnerable to pressure or suggestion that he participate to improve his chances of being rehired; (2) the club was an official school club, and the picnic was an annually scheduled event; (3) teachers were encouraged to participate in school club activities; (4) annual evaluations of teachers were based in part on their willingness to participate in club activities; (5) the event benefited the school by promoting better student-teacher relationships; (6) math club funds were used to provide food and refreshments; and (7) students were required to submit parental permission slips in order to participate. (*Id.* at 141.)

In *Wilson v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 902 [239 Cal.Rptr. 719] (hereafter *Wilson*), the claimant was a police officer who injured his ankle while running at a junior college track. As a member of the police department's special emergency response team (SERT), he had to pass physical tests four times a year in order to remain on the team. The tests included a requirement that officers over the age of 35 must be able to run two

miles in 17 minutes. A SERT supervisor testified he told SERT officers that they would have to engage in off-duty exercise to pass the tests. (*Id.* at pp. 904, 908.) The Court of Appeal held the injury was compensable because "[i]t would be completely unrealistic to conclude that off-duty running was not expected" of a SERT member over 35 years old who wanted to pass the SERT tests. (*Id.* at p. 908.)

In *Kidwell v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1130 [39 Cal.Rptr.2d 540] (hereafter *Kidwell*), the Court of Appeal found compensable an injury suffered by a California Highway Patrol (CHP) officer while she was practicing a standing long jump at home. The standing long jump was a required protocol of the CHP's annual, mandatory fitness test. In past years, she had passed the fitness tests except for the standing long jump. Her failure to pass the standing long jump had significant consequences, including the loss of a $130 per month salary differential, loss of eligibility for certain assignments and overtime, issuance of a "fitness plan," and an entry in her performance evaluation. (*Id.* at pp. 1132, 1133 & fn. 4.) Under the circumstances, the court concluded that it would be "patently unreasonable" to find the CHP did not expect the claimant to practice for the standing long jump test. (*Id.* at p. 1139.)

On the other hand, a number of published decisions applying what is now subdivision (a)(9) have found that injuries suffered in recreational, social, or athletic settings were not covered by workers' compensation.

In *Meyer v. Workers' Comp. Appeals Bd.* (1984) 157 Cal.App.3d 1036 [204 Cal.Rptr. 74] (hereafter *Meyer*), a car salesman was injured while driving for a weekend visit to his supervisor's place near the Colorado River. (*Id.* at p. 1039.) The Court of Appeal concluded the injury was not compensable because (1) the employer did not subsidize or sponsor the event, and it was not regularly scheduled—it was just an informal invitation by a supervisor, (2) while the visit might foster improved morale, this is true of every social event and, therefore, it is not sufficient to impose compensability, and (3) there was insufficient evidence of pressure exerted to attend the outing. (*Id.* at p. 1043.) Simply stated, the "trip, although initiated by a supervisor, was not a reasonable expectancy of the employment." (*Id.* at p. 1044.)

In *Todd v. Workers' Comp. Appeals Bd.* (1988) 198 Cal.App.3d 757 [243 Cal.Rptr. 925] (hereafter *Todd*), the claimant suffered a knee injury while playing basketball on the employer's premises during a lunch break. The employer allowed employees to install a basketball hoop and backboard, and apparently condoned the games. (*Id.* at pp. 759, 760–761.) The Court of

Appeal concluded the injury was not covered by workers' compensation because there was no substantial evidence the employee "reasonably believed he was expected to participate in basketball games during his lunch break, or that participation was expressly or impliedly required by the employment." (*Id.* at p. 760.)

In *Taylor v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 211 [244 Cal.Rptr. 643] (hereafter *Taylor*), the claimant was a police officer who was injured at a city-owned gymnasium while playing in a pickup game of basketball during his lunch hour. Although the police department expected officers to keep themselves in good physical condition, it provided no formal training sessions or guidelines, and there were no formal physical fitness tests. The department had issued a general order that athletic injuries would be considered to be suffered on duty if they were suffered in a preapproved athletic event, but that workers' compensation benefits would not be awarded without advance approval of the event. (*Id.* at pp. 213, 214–215.) The Court of Appeal found that participation in the pickup game was voluntary, and it was not reasonably expected or required by the officer's employment. (*Id.* at p. 215.) The court added that it is reasonable to permit an employer to limit its liability for athletic injuries, as had the department. "To hold otherwise would in effect render the employer potentially liable for any injury sustained in any recreational or athletic activity if the activity contributed to the employee's physical fitness. Such broad potential liability would be contrary to the legislative intent of section 3600, subdivision (a)(9)." (*Id.* at p. 216.)

In *Tensfeldt v. Workers' Comp. Appeals Bd.* (1998) 66 Cal.App.4th 116 [77 Cal.Rptr.2d 691], the claimant was a city water department employee who injured his knee while playing basketball with other department employees at a city gymnasium during the workday. The game was conducted during working hours because the employees had finished their job assignments early. (*Id.* at p. 119.) The Court of Appeal held the injury was not covered by workers' compensation. The fact the employee was not technically off duty at the time did not change the fact that participation was voluntary and was not reasonably expected or required by the employer. (*Id.* at p. 126–127.)

II

The authorities discussed in part I, *ante,* illustrate the rule that when an employee is injured during voluntary, off-duty participation in a recreational, social, or athletic activity, the injury is not covered by workers' compensation, unless the activity was "a reasonable expectancy of, or [was] expressly or impliedly required by, the employment." (§ 3600, subd. (a)(9).)

In applying the reasonable expectancy test, we first consider whether the employee subjectively believed that participation in the activity was expected by the employer. (*Ezzy, supra,* 146 Cal.App.3d at p. 260.) This issue is a question of fact, which we review under the substantial evidence rule. (*Meyer, supra,* 157 Cal.App.3d at p. 1042.)

We then determine whether the employee's belief was objectively reasonable. (*Ezzy, supra,* 146 Cal.App.3d at p. 260.) This issue is a question of law that we determine independently. (*Meyer, supra,* 157 Cal.App.3d at p. 1042.)

In considering these issues, we must focus our attention on the specific activity in which the employee was involved when the injury occurred. This is so because subdivision (a)(9) is not intended to replace the basic requirement that to be compensable, (1) an injury must occur while the employee is performing service growing out of and incidental to his or her employment and acting in the course of employment, and (2) the employment must be the proximate cause of the injury. (§ 3600, subd. (a)(2) & (3); *Wilson, supra,* 196 Cal.App.3d at p. 905.) Subdivision (a)(9) was intended to limit, rather than to expand, the scope of liability that an excessively liberal application of the basic test might support. (*Meyer, supra,* 157 Cal.App.3d at pp. 1040–1041; *Hughes Aircraft Co., supra,* 149 Cal.App.3d at p. 575.)

■ Indeed, unless courts require a substantial nexus between an employer's expectations or requirements and the specific off-duty activity in which the employee was engaged, the scope of coverage becomes virtually limitless and contrary to the legislative intent of subdivision (a)(9). (*Taylor, supra,* 199 Cal.App.3d at p. 216; see also *Fireman's Fund, supra,* 39 Cal.2d at p. 534; *City of Los Angeles, supra,* 91 Cal.App.3d at p. 764.)

Accordingly, general assertions that it would benefit the employer for, or even that the employer expects, an employee to stay in good physical condition are not sufficient to require workers' compensation for injuries suffered by the employee during any recreational or athletic activity in which the employee chooses to participate. (*Taylor, supra,* 199 Cal.App.3d at p. 216; see also *Fireman's Fund, supra,* 39 Cal.2d at p. 534; *City of Los Angeles, supra,* 91 Cal.App.3d at p. 764.)

The decisions that have allowed workers' compensation pursuant to subdivision (a)(9) have generally found the employer expected the employee to participate *in the specific activity* in which the employee was engaged at the time of injury. In *Ezzy,* the employer expected the employee to play on the law firm's softball team in a regularly scheduled game, and that is what she was doing when she was injured. (*Ezzy, supra,* 146 Cal.App.3d at pp. 257–258,

263–264.) In *Wilson*, the employer expected the employee to engage in off-duty running in order to pass the running test to which he was subjected four times a year, and he was running when injured. (*Wilson, supra*, 196 Cal.App.3d at p. 908.) In *Kidwell*, the employer expected the employee to practice the standing long jump in order to meet its testing requirements, and that is what she was doing when injured. (*Kidwell, supra*, 33 Cal.App.4th at p. 1139.)

We also must look for specific conduct of the employer that would reasonably convey to the employee that participation in a particular activity is expected. Again, general assertions of benefit to the employer, or that the employer condones or allows the activity, are insufficient. (*Todd, supra*, 198 Cal.App.3d at p. 760; *Meyer, supra*, 157 Cal.App.3d at p. 1043; *Hughes Aircraft, supra*, 149 Cal.App.3d at p. 575.)

Decisions that have found employee injuries compensable under subdivision (a)(9) have found *specific conduct by the employer with respect to the activity* at issue. In *Ezzy*, a partner of the law firm handed the employee a t-shirt and schedule and said the team would see her at the next game. While this was less than a direct order, it was not a mere invitation to play should she so desire. (*Ezzy, supra*, 146 Cal.App.3d at pp. 257, 258.) In *Smith*, the teacher's annual evaluation was based in part on his willingness to participate in student club activities. (*Smith, supra*, 191 Cal.App.3d at p. 141.) In *Wilson*, the employer required the employee to pass a specific running test four times a year. (*Wilson, supra*, 196 Cal.App.3d at p. 908.) In *Kidwell*, a standing long jump was part of the employer's mandatory fitness testing program and there were significant adverse consequences for failure. (*Kidwell, supra*, 33 Cal.App.4th at p. 1139.)

## III

Turning to the facts of this case, we first conclude the evidence does not support a finding that Officer Jenneiahn subjectively believed that his employer expected him to engage in an occasional pickup game of basketball.

Officer Jenneiahn remembered that his employment application said an officer must be fit to do the job, some of his training officers advised him to stay in shape, and he believed that an officer should be in shape to do the job. However, he knew that he was not subject to any kind of physical fitness testing or examination, and he was not aware of any officer having been disciplined for not being physically fit.

Moreover, Officer Jenneiahn did not incorporate games of pickup basketball into a training regimen. He played only occasionally, maybe once a

month. He believed that basketball was not necessary to maintain his physical fitness; he stayed in shape by running and through his officiating job at high school games. And he testified that he was in shape regardless of the occasional pickup basketball game.

In addition, the pickup game in which Officer Jenneiahn was playing when injured was wholly unconnected to his employer. It was in a private facility that was not owned or operated by the employer. The game was not part of a league or other scheduled event. There is nothing in the record to suggest the employer in any way sponsored, encouraged, condoned, or was even aware of the activity. In fact, the employer had issued a directive prohibiting any employee from using the private facility for any reason during the employee's work hours.

In sum, the evidence does not establish that Officer Jenneiahn believed that his employer expected him to participate in the game of pickup basketball. The record establishes only his belief that it was a good idea for a police officer to stay in good physical condition, and his leap to a conclusion that any physical activity in which an officer chooses to engage must be covered by workers' compensation. Such a belief is far too broad and inconsistent with the legislative intent of subdivision (a)(9).

We also conclude that even if there was evidence that Officer Jenneiahn subjectively believed his employer expected him to play in a pickup game of basketball, this belief would not have been objectively reasonable. The game had no connection whatsoever to the employer. It was conducted in a private facility over which the employer had no control. It was not a scheduled activity, and the employer did nothing to sponsor, encourage, or condone the activity. Although the employer expected its officers to maintain sufficient general physical fitness necessary to perform their duties, it did not subject officers to any form of physical fitness testing, let alone testing on the skills utilized in playing basketball. And Jenneiahn knew that playing basketball was unnecessary to his physical fitness for the job.

█ On this record, it is readily apparent that playing in the off-duty pickup game of basketball was a wholly voluntary choice by Officer Jenneiahn. His employer did not exert any form of pressure to make his choice less than voluntary. The general, and reasonable, expectation that a police officer will maintain sufficient physical fitness to perform his or her duties is not a sufficient basis to extend workers' compensation coverage to any and all off-duty recreational or athletic activities in which an officer voluntarily chooses to participate.

## DISPOSITION

The award of workers' compensation benefits is annulled, and the matter is remanded to the Workers' Compensation Appeals Board with directions to enter an order denying such benefits. The parties shall bear their own costs in the proceedings before this court.

Butz, J., and Cantil-Sakauye, J., concurred.