Filed 6/25/14

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Butte)

----

| | |
|---|---|
| DANIEL YOUNG, | C075047 |
| Petitioner, | (WCAB No. ADJ8321113) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD AND COUNTY OF BUTTE, | |
| Respondents. | |

ORIGINAL PROCEEDING; petition for writ of review from a decision of the Workers' Compensation Appeals Board. Decision annulled and matter remanded.

Mastagni, Holstedt, Amick, Miller & Johnsen and Craig E. Johnsen for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Cuneo, Black, Ward & Missler, Richard A. Weyuker and Lauren E. Sible for Respondent County of Butte.

1

Labor Code section 3600, subdivision (a)(9) (hereafter section 3600(a)(9))[1] forecloses workers' compensation coverage for an injury that arises out of "voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment."

We conclude that a county jail correctional sergeant's off-duty injury, sustained when he was performing jumping jacks at home as part of his regular warm-up exercise regimen, arose in the course of his employment under section 3600(a)(9)'s exception for coverage, where a departmental order required correctional officers to "maintain themselves in good physical condition so that they can handle the strenuous physical contacts often required of a law enforcement officer," and where the Butte County Sheriff's Department (the Department) required its correctional officers to undergo periodic training exercises, many of which involved physical activity. Consequently, we annul the decision from the Workers' Compensation Appeals Board (WCAB), which concluded otherwise, and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Sergeant Daniel Young, the petitioner here, was initially hired in 1994 as a jail booking officer by the Department. Young accepted a position as a correctional officer within the same department in May 1995 after passing a required physical fitness test.[2] In 1999 Young was promoted to correctional sergeant, the same position he held when he sustained his injury.

---

[1] Undesignated statutory references are to the Labor Code.

[2] Sergeant Young has not taken any other physical fitness tests since the initial test in 1995; however, Young did partake in a physical fitness test in 1999 to help establish a baseline for a redesigned physical fitness test. Neither of these two tests involved jumping jacks.

Pursuant to Departmental Order No. 3004 (Departmental Order 3004), issued in February 2004, correctional officers, including correctional sergeants, are required to "maintain themselves in good physical condition so that they can handle the strenuous physical contacts often required of a law enforcement officer." The Department's class specification bulletin for correctional sergeants, which describes the job duties of that position, requires correctional sergeants to be able to perform the same duties as correctional officers. And this same bulletin indicates, "Work occasionally involves personal danger, and exposure to hazardous, uncontrollable and life-threatening situations . . . . This position may require walking, running, lifting and climbing during efforts to catch or subdue hostile individuals. [¶] . . . [¶] Required to physically restrain persons."

Correctional sergeants are also required to complete periodic training exercises each year, many of which involve physical activity. Sergeant Young testified the training exercises begin with "a warm-up period because of the physical requirements the class . . . place[s] on a[n] individual later." Young further testified many of the training sessions involve "pairing off with a partner, taking turns being the aggressor versus the officer . . . and practicing control holds, . . . physical control techniques, take-down techniques, [and] both self-defense and offensive methods." Young also testified that during baton training sessions, sergeants "are required to go . . . against an inanimate object full out for a long period of time," which Young described as being "extremely strenuous."

Despite requirements to maintain good physical condition, the Department does not provide officers with an opportunity to exercise or participate in a fitness regimen during work hours; nor does the Department provide guidance as to the types of exercises or activities considered appropriate for maintaining the requisite level of fitness. As such, Sergeant Young maintains his physical fitness through his own fitness regimen at home when off duty. Young's fitness regimen involves doing warm-up calisthenics,

3

including jumping jacks, before engaging in more rigorous exercises on his elliptical machine or on his multistation weight machine.[3]

On January 9, 2012, Sergeant Young was doing his usual warm-up calisthenics, specifically jumping jacks, in anticipation of more demanding exercises with his elliptical and weight machines. During one of the jumping jacks, Young came down and felt "extreme stabbing pain in [his] left knee." Young reported this injury as work-related "because the injury took place specifically because [he] was exercising in order to maintain [him]self in a physical condition required by [the] [D]epartment."

Sergeant Young testified he believes jumping jacks have helped him manage his weight since reaching middle age and have helped improve his cardiovascular health. Young testified he has "serious questions as to whether or not [he] would have been healthy enough" to perform his duties without his exercise regimen. Young also testified he believed the Department expected him to maintain good physical condition and he believed he could be terminated if he was not capable of performing his job duties. Young further testified he has reminded the correctional officers he supervises "they need to remain in [good] physical condition in order to do their job."

The workers' compensation judge (WCJ) concluded that Sergeant Young's injury was compensable under section 3600(a)(9), finding, under the applicable legal test, that Young had a subjective belief the Department expected him to engage in a physical fitness regimen, and that such a belief was objectively reasonable. The WCAB disagreed that such a belief was objectively reasonable under a mere "general requirement" to maintain fitness, and annulled the WCJ's decision. We issued a writ of review to review the WCAB's decision.

---

[3] Sergeant Young added that he and his wife, who is a correctional deputy, "love to walk when [they] can and consider that . . . part of [their] workout."

4

# DISCUSSION

## Sergeant Young's Injury Is Compensable Under Section 3600(a)(9)

### A. *Issue on Writ Review*

Section 3600 "provides generally that an injury is covered by workers' compensation benefits when, at the time of the injury, 'the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment' and 'the injury is proximately caused by the employment . . . .' " (*City of Stockton v. Workers' Comp. Appeals Bd.* (2006) 135 Cal.App.4th 1513, 1519 (*City of Stockton*).) Section 3600(a)(9) specifically explains that an injury that arises out of " 'voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties' " is not compensable, " 'except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment.' " (*City of Stockton*, at p. 1520.)

In *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 (*Ezzy*), the Court of Appeal, First Appellate District, Division Two, concluded that what is now section 3600(a)(9) was added to the workers' compensation statutory scheme " 'to draw a brighter line delimiting compensability by replacing the [previous] general foreseeability test with one of "reasonable expectancy" of employment' [citation], a test that is met when [(1)] the employee subjectively believes his or her participation in the [injury-producing] activity is expected by the employer, and [(2)] the belief is objectively reasonable." (*City of Stockton*, *supra*, 135 Cal.App.4th at p. 1520, [delineating the *Ezzy* test].)

Under this two-pronged *Ezzy* test, the issue of subjective belief is a question of fact, which we review under the substantial evidence rule; and the issue of objective reasonableness is a question of law, which we determine independently. (*City of Stockton*, *supra*, 135 Cal.App.4th at p. 1524.)

5

The issue in this writ review proceeding is whether the second prong of the *Ezzy* test—i.e., whether the employee's belief is objectively reasonable—is met here.[4]

### B.  *Section 3600(a)(9) as Applied to Law Enforcement Officers*

There have been a number of cases applying section 3600(a)(9) (or its predecessor), which have found injuries—sustained by law enforcement officers while engaging in athletic activities—to be compensable under workers' compensation; they include the following three cases:

(1) *Wilson*, *supra*, 196 Cal.App.3d 902, where the Court of Appeal, Fifth Appellate District, found compensable an ankle injury sustained by a police officer while running off duty at a school track.  (*Id.* at pp. 904, 909.)  As a member of the police department's special emergency response team (SERT), the officer had to pass physical tests four times a year to remain on the team.  (*Id.* at p. 904.)  The tests included a requirement that officers over the age of 35, as was the officer in *Wilson*, must be able to run two miles in 17 minutes.  (*Ibid.*)  SERT officers were told by supervisors that they would have to exercise off duty to pass the tests.  (*Id.* at p. 906.)  The *Wilson* court found the injury compensable because "[i]t would be completely unrealistic to conclude that off-duty running was not expected of [a] [SERT] member over 35 years of age who

---

[4] Both parties' briefs mention the first prong of the *Ezzy* test—subjective belief—only in passing; these briefs focus on the *Ezzy* test's second prong of objective reasonableness. The WCJ found that Sergeant Young met the first prong through his testimony; and the WCAB did not address this prong directly, merely noting that the first prong has been labeled a "lax standard" (quoting *Wilson v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 902, 906 (*Wilson*)) and that most cases are decided on the second prong of the *Ezzy* test.  To the extent the first prong is raised as an issue, Sergeant Young's testimony, detailed in the Factual and Procedural Background of this opinion, is more than sufficient to satisfy that prong.  (See *Aetna Casualty & Surety Co. v. Workers' Comp. Appeals Bd.* (1986) 187 Cal.App.3d 922, 932 [an employee satisfies the subjective prong of *Ezzy* by testifying he or she felt that participation in the activity was mandated by the employment relationship].)

wanted to pass the [department's] test of running [two] miles in 17 minutes or less." (*Id.* at p. 908.)

(2) *Kidwell v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1130 (*Kidwell*), where the Court of Appeal, First Appellate District, Division Five, found compensable an injury sustained by a California Highway Patrol (CHP) officer while she was practicing a standing long jump at home. (*Id.* at p. 1139.) The standing long jump was part of the CHP's annual, mandatory fitness test. (*Id.* at p. 1132.) In previous years, the CHP officer in *Kidwell* had passed the fitness tests except for the standing long jump. (*Id.* at pp. 1132-1133.) This deficiency resulted in the loss of $130 per month in salary, loss of eligibility for certain assignments and overtime, issuance of a "fitness plan," and an entry in her performance evaluation. (*Id.* at p. 1133.) Under the circumstances, the *Kidwell* court concluded that it would be "patently unreasonable" to find the CHP did not expect the officer to practice for the standing long jump test at her home. (*Id.* at p. 1139.)

And (3) *Tomlin v. Workers' Comp. Appeals Bd.* (2008) 162 Cal.App.4th 1423 (*Tomlin*), in which the officer, who sustained an injury while running on vacation, was a member of the police department's SWAT (special weapons and tactics) unit. (*Id.* at pp. 1425-1426.) As a SWAT member, the officer was required to pass a fitness test to qualify for the unit initially, and was required to pass supplemental fitness tests each year. (*Id.* at pp. 1425, 1430.) The Court of Appeal, Second Appellate District, Division Five, found the injury compensable under section 3600(a)(9), because the SWAT officer was injured while training for "an imminent, mandatory, physical fitness test to be administered by his employer." (*Tomlin*, at p. 1430.) As such, the court found that the training activities were a reasonable expectancy of employment even though the officer was on vacation. (*Id.* at p. 1431.)

7

There have also been cases applying section 3600(a)(9) (or its predecessor), which have found injuries—sustained by law enforcement officers while engaging in athletic activities—not to be compensable under workers' compensation; they include:

(1) *Taylor v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 211 (*Taylor*), where a police officer was injured at a city-owned gymnasium while playing in a pickup game of basketball during his lunch break. (*Id.* at p. 213.) The police department expected officers to keep in good physical condition; however, the department provided no formal fitness training sessions or guidelines, and there were no formal physical fitness tests. (*Id.* at pp. 213-214.) The police department also issued a general order, which included a provision that workers' compensation benefits would not be awarded for athletic injuries unless approval for an athletic event or exercise had been obtained in advance. (*Id.* at p. 214.) The Court of Appeal, First Appellate District, Division Two, found the injury not compensable, as participation in the pickup game was voluntary and it was not reasonably expected or required by the officer's employment. (*Id.* at p. 215.) The court added that it is reasonable to permit an employer to limit its liability for athletic injuries, as had the department, because "[t]o hold otherwise would in effect render the employer potentially liable for any injury sustained in any recreational or athletic activity if the activity contributed to the employee's physical fitness. Such broad potential liability would be contrary to the legislative intent of section 3600, subdivision (a)(9)." (*Id.* at p. 216.)

And (2) *City of Stockton*, *supra*, 135 Cal.App.4th 1513, where this court found an officer's injury, sustained while playing in an off-duty pickup basketball game, was not compensable. Although the officer's employment application stated an officer must be fit, and he believed officers should be in shape, the officer knew he was not subject to any kind of fitness testing and he was not aware of any officer being disciplined for not being fit. (*Id.* at p. 1525.) Additionally, the officer did not incorporate pickup games of

8

basketball into a training regimen and he testified he would have been in shape regardless of the occasional pickup game of basketball. (*Id.* at pp. 1525-1526.) When considering the objective reasonableness prong of the *Ezzy* test, we noted the pickup game of basketball had no connection whatsoever to the employer and the employer did not subject its officers to any form of physical fitness testing, nor any type of testing requiring the type of skills used in playing basketball. (*Id.* at p. 1526.)

### C.  Section 3600(a)(9) as Applied to this Case

Turning to the facts of this case, we find the second prong of the *Ezzy* test is satisfied because Sergeant Young's belief—that the Department expected him to engage in warm-up calisthenics as part of an off-duty exercise regimen—was objectively reasonable as a matter of law.

The legal standards that must be met to find a belief objectively reasonable are as follows. The focus is "on the specific activity in which the employee was involved when the injury occurred." (*City of Stockton, supra*, 135 Cal.App.4th at p. 1524.) There must be a "*substantial nexus* between an employer's expectations or requirements and the *specific off-duty activity* in which the employee was engaged[; otherwise] the scope of coverage becomes virtually limitless and contrary to the legislative intent of [section 3600](a)(9)." (*Id.* at p. 1524, italics added.) The decisions that have found workers' compensation coverage under section 3600(a)(9) have generally found "the employer expected the employee to participate *in the specific activity* in which the employee was engaged at the time of injury" and have found "*specific conduct by the employer with respect to the activity* at issue." (*City of Stockton*, at pp. 1524-1525.)

The Department principally argues that Sergeant Young's "subjective belief that engaging in jumping jacks as part of his home exercise program was required by [the Department] is not objectively reasonable because it was based [merely] on a *general obligation* to maintain good physical fitness." (Italics added.) We disagree.

9

We start with Departmental Order 3004, which states, "Physical fitness for duty: Members shall maintain themselves in good physical condition so that they can handle the strenuous physical contacts often required of a law enforcement officer." And we couple that order with the class specification bulletin for correctional sergeants, which reiterates, "Work occasionally involves personal danger, and exposure to hazardous, uncontrollable and life-threatening situations . . . . This position may require walking, running, lifting and climbing during efforts to catch or subdue hostile individuals. [¶] . . . [¶] Required to physically restrain persons." As noted, both of these directives apply to correctional sergeants.

Although these departmental directives required correctional sergeants to maintain good physical condition and a certain physical ability, the Department does not provide correctional sergeants with an opportunity to exercise or maintain a fitness regimen during work hours; nor does the Department provide guidance as to the types of exercises or activities considered appropriate for maintaining the requisite level of fitness. Accordingly, it is objectively reasonable for Sergeant Young to believe that the Department expected him to engage in an off-duty exercise regimen to maintain his physical fitness.

Furthermore, given Departmental Order 3004's requirement that correctional sergeants maintain good physical condition, it is also objectively reasonable to believe the Department would have expected the specific activity of warm-up calisthenics as part of a sergeant's exercise regimen, particularly for a 64-year-old officer such as Sergeant Young. And jumping jacks are one of the most common such calisthenics. Young testified he believes jumping jacks helped improve his cardiovascular health and he had "serious questions as to whether or not [he] would have been healthy enough" to perform his duties without his exercise regimen. If the fitness requirement in Departmental Order 3004 means anything, it surely must encompass the specific activity at issue here: a

10

traditional, low-risk, widely performed warm-up calisthenic. Consequently, there is a substantial nexus between the Department's requirement that its correctional sergeants maintain good physical condition and Sergeant Young's specific off-duty activity of warm-up calisthenics, which included jumping jacks.

In *Wilson*, the Court of Appeal, Fifth Appellate District, found it "completely unrealistic" to conclude that off-duty running was not expected of SERT officers over 35 years of age who wanted to meet the SERT-membership requirement of a 17-minute two-mile run. (*Wilson*, *supra*, 196 Cal.App.3d at p. 908.) Similarly, here, it would be "completely unrealistic" to conclude that warm-up calisthenics, of which jumping jacks are one of the most common, were not expected of middle-aged correctional sergeants who were required to maintain good physical condition so they could handle strenuous physical contact.

Although this case does not involve preparation for an employer-required specific fitness test (see *Kidwell*, *supra*, 33 Cal.App.4th at p. 1139) or an employer-required specific level of fitness for special units (see *Wilson*, *supra*, 196 Cal.App.3d at pp. 907-908; *Tomlin*, *supra*, 162 Cal.App.4th at p. 1429), the Department does require correctional sergeants to undergo periodic training exercises, which often involve physical activity that can be "extremely strenuous." Sergeant Young testified these training exercises begin with "a warm-up period because of the physical requirements the class . . . place[s] on an individual later." For example, during the baton training exercise, correctional sergeants are required to go "full out for a long period of time" against an inanimate object. And, interestingly, the periodic training exercises begin with a warm-up period, further supporting a conclusion that the Department expected warm-up exercises as part of an exercise regimen. The whole purpose of doing warm-up calisthenics is to prevent injury when more rigorous exercises are undertaken.

11

Finally, unlike the officer in *Kidwell*, who was training specifically for the standing long jump (33 Cal.App.4th at p. 1139), it would be impracticable for correctional sergeants to tailor an exercise regimen for the purpose of passing the periodic training exercises given the wide variety of those exercises. Indeed, Sergeant Young has completed required training exercises involving physical activity, such as: Taser update, cell extraction, restraint chair, baton use, arrest and control techniques, grappling, control holds, and joint locks. Accordingly, it would be reasonable for correctional sergeants to believe the Department expected them at least to maintain sufficient cardiovascular health to pass the training exercises.

To allay any concerns law enforcement departments may have about potentially increased liability as a result of this decision, we note that departments have the ability to limit the scope of potential liability by designating and/or preapproving athletic activities or fitness regimens as the police department did in *Taylor*. (See *Taylor*, *supra*, 199 Cal.App.3d at p. 216.)

## DISPOSITION

Sergeant Young's injury is compensable under section 3600(a)(9)'s exception for coverage. Accordingly, the WCAB's decision is annulled and the matter is remanded to the WCAB for proceedings consistent with this opinion. Sergeant Young is awarded his costs in the proceeding before this court. (Cal. Rules of Court, rule 8.936.)

(***CERTIFIED FOR PUBLICATION***)

                                              BUTZ            , J.

We concur:

     NICHOLSON       , Acting P. J.

     HULL            , J.

12