[Civ. No. 27959. Fourth Dist., Div. Two. Dec. 23, 1982.]

C. L. PHARRIS SAND & GRAVEL, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
JAMES R. LINDSEY, Respondents.

**COUNSEL**

Kriner & Hebner and Paul D. Kriner for Petitioners.

John A. Crawley for Respondents.

**OPINION**

**KAUFMAN, J.**—C. L. Pharris Sand & Gravel, Inc. (employer) and Fidelity and Casualty Company of New York, the employer's workers' compensation insurance carrier, petitioned for review of an order of the Workers' Compensation Appeals Board (Board) denying reconsideration of an order determining that an injury to the applicant, James R. Lindsey, is fully compensable under the Workers' Compensation Act. A writ of review issued and the matter is now before us for decision.

Employer is in the business of producing rock, sand and gravel and, as a member of an association of rock, sand and gravel producers, is a party to a

collective bargaining agreement between the association and Local 12 of the International Union of Operating Engineers. Under the contract union membership was required for employment.

The union has an apprenticeship program which requires, in addition to on-the-job training, mandatory attendance at apprenticeship training classes whether the apprentice is employed or not. If an apprentice fails to attend required classes, the union has the power to impose sanctions including precluding the apprentice from working for any employer subject to the union contract.

The apprenticeship program is administered by an entity called the Operating Engineers Training Trust (the trust). The curriculum, the class schedules, the location and time of classes and class assignments are determined and made by the trust.

The collective bargaining agreement contains a provision which obligates employers to pay to the trust 4 cents per hour for each hour worked by an apprentice and to abide by the agreement and declaration of trust by which the trust was apparently established. A matching 4 cents per hour worked by each apprentice is paid by the union to the trust. These funds are used to pay the costs of operating the apprenticeship program.

On December 12, 1979, the applicant was employed by employer as an apprentice equipment operator.[1] On that day applicant worked his usual shift from 7 a.m. to 3:30 p.m. at the employer's premises. That evening he attended his regularly scheduled apprenticeship training class at a high school facility operated by the San Bernardino City Unified School District. Applicant had traveled to class as a passenger in an automobile driven by a friend who was also an apprentice attending class but who was not employed by employer. After the class ended, applicant and his friend proceeded in the friend's car on a direct route home. Approximately 300 or 400 yards from the applicant's house, the car was struck by a hit-and-run vehicle. Applicant jumped out of the car in an attempt to obtain the license number of the vehicle and was struck by the other vehicle as it left the scene of the accident. He allegedly suffered injuries to his right knee and head resulting in temporary and permanent disability.

---

[1]The applicant had been so employed for a period of approximately seven months. Before that he was employed by another firm as an apprentice and attended apprenticeship classes at that time. After at least partially recovering from the injury that is the subject of this proceeding the applicant went to work for another firm as an apprentice and is reportedly continuing to attend apprenticeship classes.

It is undisputed that the applicant was never required by employer to take instruction in any particular course or class of instruction and that he attended the classes designated by the trust at the time and location designated by the trust. At no time was transportation to or from the classes provided or paid for by the employer, and the employer never asked or required applicant to perform any work or run any errands either before or after or during the training classes. Applicant was never required to take any equipment, tools or other materials to class by the employer. Nor did the employer invite or encourage applicant or other workers to attend night school or obtain higher education in order to better perform their jobs or to enhance their chances of promotion.

Following trial of the bifurcated issue as to whether the injury arose out of and in the course of the employment the workers' compensation judge (WCJ) initially determined the injury was not compensable, distinguishing *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860 [101 Cal.Rptr. 105, 495 P.2d 433], and questioning whether applicant was in the employ of any of the defendants[2] while attending apprenticeship classes.

Applicant petitioned for reconsideration. In his report and recommendation on the petition for reconsideration, the WCJ stated that although he believed he had correctly decided the case, he thought reconsideration should be granted and the matter remanded for further proceedings because of a number of perceived procedural irregularities. The Board adopted the WCJ's recommendation and remanded the matter for further proceedings.

---

[2] The San Bernardino City Unified School District and the Operating Engineers Training Trust had been joined as parties defendant to the application, apparently on the theory that one of them might have been the employer. (Cf. Lab. Code, § 3368, which provides in pertinent part: "Notwithstanding any provision of this code or the Education Code to the contrary, the school district or county superintendent of schools under whose supervision work-experience education, or occupational training classes held in the community, as defined by regulations adopted by the State Board of Education, are provided shall be considered the employer under Division 4 (commencing with Section 3200) of persons receiving such training unless such persons during such training are being paid a cash wage or salary by a private employer, or unless the person or firm under whom such persons are receiving work-experience or occupational training elects to provide workers' compensation insurance."

Effective January 1, 1981, section 3368 was amended by the addition of the following provision: "An apprentice, while attending related and supplemental instruction classes, shall be considered to be *in the employ of the apprentice's employer* and not subject to this section, unless the apprentice is unemployed." (Stats. 1980, ch. 1165, § 4, p. 3918; italics added.)

However, section 5 of the same statute indicated that the amendment was only explanatory and not intended to make any substantive change. It reads: "The Legislature finds and declares that Sections 1, 2, and 4 of this act are intended to clarify the provisions of Sections 51769 and 78249 of the Education Code and Section 3368 of the Labor Code, and thereby to promote and to facilitate the uniform administration of such provisions throughout the state. It is the further intent of the Legislature that this act does not add any new responsibilities, risks, or duties to any employer. It is therefore the intent of the Legislature in Sections 1, 2 and 4 of this act only to declare, preserve, and to clarify the original intent and existing statutory law." (Stats. 1980, ch. 1165, § 5, p. 3918.)

On remand, the WCJ was persuaded the applicant was deemed employed by employer while attending apprenticeship classes pursuant to Labor Code section 3368 (see fn. 2, *ante*). Having so determined, the WCJ concluded compensation was not precluded by the going and coming rule because the "[a]pplicant was injured while on a special mission."

Employer then petitioned for reconsideration. In his report the WCJ recommended the petition be denied, repeating his conclusions that under Labor Code section 3368 the applicant was deemed employed by employer while attending classes and that compensation was not precluded by the going and coming rule because the applicant "was on a special mission of his employment." The Board denied reconsideration, adopting the report and recommendation of the WCJ.

Employer faults the analysis of the WCJ, asserting that having determined the applicant was deemed employed by employer while attending classes, the WCJ then jumped to the conclusion that the special errand or special mission exception to the going and coming rule was applicable. ■ Whether or not the WCJ's legal analysis is justly subject to that criticism we need not determine because, in any event, a reviewing court is not bound by the legal conclusions of the trier of fact as to the compensability of an injury when the facts are not in dispute. (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d at pp. 864-865.)

However, employer is correct that the fact the applicant is statutorily considered to be in its employ while attending apprenticeship classes does not end, but merely begins, the inquiry whether his injury resulting from an automobile accident while returning home from attending class is compensable. Since applicant was injured not while attending classes but on his way home from class the question is whether compensation is barred by the going and coming rule. (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d at pp. 865-866.) ■ " 'Ordinarily, under the going and coming rule, an injury which occurs while an employee is driving to or from work is not compensable. . . .' " (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d at p. 866, quoting *Garzoli* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502, 505 [86 Cal.Rptr. 1, 467 P.2d 833]; accord: *Wilson* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 181, 184 [127 Cal.Rptr. 313, 545 P.2d 225]; *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 946-947 [59 Cal.Rptr. 622, 428 P.2d 606].)

In broad terms, therefore, the question is whether applicant's injury is compensable under the exception to the going and coming rule known as the special errand or special mission exception.

As applicant correctly points out, after discussion of numerous cases dealing with the special mission exception, the California Supreme Court in *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at page 868, synthesized: "The rule which emerges from these cases is that when the employee engages in a *special activity* which is *within the course of his employment,* and which is reasonably *undertaken at the request or invitation of the employer,* an injury suffered while traveling to and from the place of such activity is also within the course of employment and is compensable." (Italics added.)

*Dimmig* thus sets up a three-prong test, the elements of which are applicable to the instant case: (1) whether the employee was engaged in a special activity extraordinary in relation to his routine duties; (2) whether the activity was within the course of the employment; and (3) whether the activity was undertaken at the request or invitation of the employer.

Employer now concedes applicant's attendance of the apprenticeship class is deemed to be within the course of his employment pursuant to Labor Code section 3368 (see fn. 2, *ante*). Employer contends, however, that applicant's attendance of the apprenticeship class was not a special activity within the contemplation of *Dimmig* and that even if it was, the activity was not undertaken by the applicant at the request or invitation of the employer. We conclude employer's contention that the activity was not undertaken at its request or invitation is sound. We are therefore not required to determine whether or not applicant's attendance of the apprenticeship class was a special activity under *Dimmig*.

Employer contends applicant's attendance at the apprenticeship classes was not at its request or invitation but rather at the direction of the union as a condition to union membership. Applicant contends "[a]ttendance was *not* mandated solely by the Union . . ., but rather by a *joint* Union/Employer contract signed by representatives of both Union and Employer, established by a *joint* committee and designed to promote their *mutual* interest." (Italics in original.) We conclude the position of employer is well taken.

Attendance by applicant of apprenticeship classes is not required by the collective bargaining agreement. That agreement obligates affected employers only to abide by the agreement and declaration of trust by which, apparently, the Operating Engineers Training Trust was established and to pay to the trust 4 cents for each hour worked by apprentices in the program. The aspect of the collective bargaining agreement that is pertinent is that it establishes a closed union shop, that is, employers who are parties to the agreement may employ only persons who are members of the union. Mandatory attendance of apprenticeship classes is a requirement of the union for union membership. Indeed, at-

tendance of apprenticeship classes is required by the union whether the apprentice is employed or not.

Thus it is that in this very case and in respect to the very classes he was attending, applicant was furnished by the union a sheet of detailed instructions concerning the apprenticeship program entitled *"A.B.C.'s"* stating in relevant part: "Related classroom training is scheduled during regular school semesters. All apprentices are expected to be in attendance at every class session. You will be notified of classroom hours and school location. . . ." The instruction sheet also gave notice that dropping out of the apprenticeship program would "automatically cancel [the apprentice's] membership in the International Union of Operating Engineers Local No. 12 . . . ."

Applicant was also furnished a letter from the Administrator of the Southern California Operating Engineers Joint Apprenticeship Committee which stated in pertinent part: "As an Apprentice you are *required* to attend all scheduled related and supplemental instruction classes. The State of California 'Shelley Maloney Apprenticeship Labor Standards Act' [Lab. Code, § 3070 et seq.] requires this. Therefore, you will attend all scheduled classes. If your employer requires you to work on a scheduled class, you will be required to make it up. Failure to comply with these rules and regulations will result in your being cited to appear before the J.A.C." (Original italics.)

It is apparently true[3] that employer also was a signatory to an "Apprentice Agreement" signed by the applicant. However, that agreement was, as employer states, signed in fulfillment of its obligations under the Shelley-Maloney Apprentice Labor Standards Act of 1939 as amended. (See Lab. Code, § 3070 et seq., and in particular §§ 3077, 3078, 3089.) Moreover, by the agreement employer simply agrees that it "will use [its] best endeavors to secure employment and training for apprentice."

 Applicant is correct that to come within the special errand exception it is not essential that the special activity be required as a condition of employment by the employer. (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra*, 6 Cal.3d at pp. 863, 865-866, 869; *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 821 [73 Cal.Rptr. 253, 447 P.2d 365]; *Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426, 428-429 [18 Cal.Rptr. 540]; see also *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].) However, a request or invitation by the employer, either express or implied, is a prerequisite to application of the special errand exception, and in every case cited by applicant the court found, noted and relied on such a request or invita-

---

[3]The copy of the apprenticeship agreement in the record contains a space for the signature of employer, but is unsigned.

tion on the part of the employer. (*Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra,* 6 Cal.3d at pp. 868-869; *Garzoli* v. *Workmen's Comp. App. Bd.*, *supra,* 2 Cal.3d at p. 506; *Smith* v. *Workmen's Comp. App. Bd.*, *supra,* 69 Cal.2d at p. 821; *Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, 353, 355 [294 P.2d 713]; *Shell Oil Co.* v. *Industrial Acc. Com.*, *supra,* 199 Cal.App.2d at p. 428; *Boynton* v. *McKales, supra,* 139 Cal.App.2d at pp. 790-791.) Indeed, in an oft cited case involving the special errand exception, the late Justice Peters speaking for the court quoted with approval from Campbell, Workmen's Compensation, " 'The *special request* for the unusual service *is the decisive factor . . . .*' " (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832]; italics added.)

██ Applicant asserts the evidence establishes the apprenticeship classes were designed to make the apprentice a better, more knowledgeable worker, that the employer used in its business some of the kinds of equipment about which applicant was learning, and employer was thus benefited by applicant's class attendance. We agree. Indeed, employer having admitted that class attendance was within the course of the employment, it cannot validly argue that it derived no benefit from applicant's attending the apprenticeship classes.

The relationship of employer benefit to the special errand exception to the going and coming rule appears to be not entirely clear. ██ One prerequisite to application of the exception is that the special activity must have been within the course of the employment. Obviously benefit to the employer is a very important consideration in determining whether that prerequisite is satisfied. (See, e.g., *Dimmig* v. *Workmen's Comp. Appeals Bd.*, *supra,* 6 Cal.3d at pp. 868-869; *Hinman* v. *Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 962-963 [88 Cal.Rptr. 188, 471 P.2d 988]; *Huntsinger* v. *Glass Containers Corp.* (1972) 22 Cal.App.3d 803, 810 [99 Cal.Rptr. 666]; *Shell Oil Co.* v. *Industrial Acc. Com.*, *supra,* 199 Cal.App.2d at pp. 428-429; cf. *Smith* v. *Workmen's Comp. App. Bd.*, *supra,* 69 Cal.2d at p. 820.)[4] Here, however, it is conceded that the applicant's attending classes was within the course of his employment.

But it is not every incidental employer benefit that will take the case out of the going and coming rule (see, e.g., *Bramall* v. *Workers' Comp. Appeals Bd.*, *supra,* 78 Cal.App.3d at p.158, and authorities there cited). Indeed, it is suggested by an eminent authority on workers' compensation law that for an injury incurred in traveling to or from the special activity to be compensable under the

---

[4]Employer benefit is, of course, the key factor in the so-called "dual purpose" exception to the going and coming rule (see, e.g., *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 160 [104 Cal.Rptr. 456, 501 P.2d 1176]; *Bramall* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151, 156-158 [144 Cal.Rptr. 105]). We believe the true legal basis for the "dual purpose" exception is that there is simply no "ordinary commute" and the going and coming rule itself is therefore inapplicable.

special errand exception to the going and coming rule, the travel itself must have been of special benefit or significance to the employer apart from what the employee was to do at his destination. (See 1 Larson, Workmen's Compensation Law, §§ 16.10, 16.11, pp. 4-123, 4-135—4-138, cited with approval in *Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d at pp. 291-292, and in *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 868.) Here, of course, there was nothing special about applicant's trip to and from classes; it was simply a normal commute no different in kind than the normal commute to perform the regular duties of his employment, and there was no benefit to employer from the travel as distinct from the learning experience in class.

If employer benefit in and of itself were sufficient to invoke the special errand exception, there would be no need for the additional requirement, universally recognized by the cases, that the special activity have been undertaken at the request or invitation of the employer. No doubt there may be cases in which the benefit to the employer is so direct and substantial and the other circumstances such that, notwithstanding the absence of an express request or invitation the employee undertake the mission or errand, an implied request or invitation may be found. (Cf. *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at pp. 863, 865-866, 869.) However, here the benefit to the employer is in our view not of that character.

By virtue of the going and coming rule the risks of the ordinary commute are left to coverage by automobile insurance, and the applicant's travel to and from apprenticeship classes, required whether or not he was employed, was of no greater benefit to employer than his traveling to or from work to perform his principal duties. It would be anomalous to hold that an employee injured while traveling home from an apprentice class is, on account of the benefit to the employer, entitled to workers' compensation benefits, whereas if he were injured while traveling to or from work for the performance of the principal duties of his employment, the injury would be noncompensable under the going and coming rule.

Finally, some reference is made to the 4 cents per hour paid to the trust by the employer for each hour applicant worked. That fact is virtually irrelevant in the circumstances of this case. The 4 cents per hour is paid to the trust to match funds paid by the union and the combined funds are used to finance the entire apprenticeship program. The 4 cents per hour paid by employer could hardly be deemed compensation to the applicant for his attending classes. Certainly it did not constitute payment of travel expenses. (See *Smith* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at p. 820; *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd., supra,* 66 Cal.2d at p. 948.)

*Conclusion and Disposition*

For the special errand exception to the going and coming rule to apply, the employer must have requested or invited the employee to embark upon the errand or mission. There was no such request or invitation by the employer in this case, and the normal going and coming rule applies.

The order of the Board is annulled.

Morris, P. J. and Trotter, J., concurred.