[No. B199942. Second Dist., Div. Three. Oct. 25, 2007.]

CITY OF LOS ANGELES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LUCINA M.
DᴇLEON, Respondents.

**COUNSEL**

Rockard J. Delgadillo, City Attorney, Valentin F. Dinu, Managing Attorney, and Karl L. Moody, Deputy City Attorney, for Petitioner.

Shelley & Graff and Robert R. Shelley for Respondent Lucina M. DeLeon.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

ALDRICH, J.—

## INTRODUCTION

The City of Los Angeles (City) seeks a writ of review after the Workers' Compensation Appeals Board (Board) denied its petition for reconsideration, thereby affirming the workers' compensation administrative law judge's (WCJ) decision finding respondent, Lucina M. DeLeon, entitled to death benefits because her husband's death arose out of and in the course of employment.

The issue presented is whether decedent Jose B. DeLeon's death occurred while he was engaged in an activity required by his employment. We hold it did not.

We reverse the Board's decision and annul the Board's order. We also deny City's request for a stay of enforcement of the Board's order that affirmed the WCJ's decision awarding death benefits as it is now moot.

## FACTUAL AND PROCEDURAL SUMMARY

Jose B. DeLeon died in Atlantic City, New Jersey, from injuries sustained in a fall on September 2, 2005. Jose had registered to attend a certified public accountant's (CPA) convention hosted by the National Council of Philippine American Canadian Accountants over the Labor Day weekend plus one vacation day. While walking back to his hotel after having lunch with his wife, Lucina, his sister and his brother-in-law, Jose fell and struck his head. He died a few days later. Jose had a long association with the society and was a past president.

Lucina was partially dependent on Jose's income and filed a claim for death benefits alleging that Jose's injury and death were related to his employment as a Principal Accountant I with City. Lucina was also employed by City as a Principal Accountant II. Neither position required a CPA license and Lucina did not have one. However, City did pay a 5.5 percent "personal achievement bonus" to accountants with a CPA license pursuant to a memorandum of understanding with the employee's union. Jose had received the bonus since his employment with City began in 1985 and he had maintained his CPA license for years before he was hired by City. City also provided annual mandatory training for their accountants, monthly seminars and videotaped seminars. Some of the training materials and courses offered by City accrued credit toward CPA licensing. City never reimbursed accountants

for classes toward a CPA license. City did reimburse certain other professional employees for classes taken to maintain licenses, such as lawyers and engineers.

Lucina believed Jose's CPA license was a benefit to City and helped him do his job better because it kept him updated on ever-changing rules and laws. However, she admitted City's monthly seminars also updated them on changes in rules and laws. Lucina testified that City did not offer sufficient continuing professional education hours to maintain a CPA license. She stated Jose had never sought reimbursement for outside continuing education courses because the memorandum of understanding with the union did not allow it. Lucina knew that City reimbursed attorneys and engineers for classes taken to maintain their licenses.

Personnel director Zovonne Lavender testified that a CPA license was not required for Jose's job and no additional interview points were given for having a CPA license to applicants for Principal Accountant I positions. Further, she stated there are few positions that require a CPA license and less than 13 percent of the accountants in the controller's office are CPA's. The controller does not have a CPA license. Lavender declared a CPA license was of no benefit to City.

The WCJ found Jose's death was work related. The WCJ reasoned that City encouraged its accountants to maintain a CPA license through a salary bonus without any limitations on how or where the credits were obtained. The WCJ concluded Jose would not have been in Atlantic City but for the work-related need to maintain his license and his death was work related based on commercial traveler principles. Alternatively, the WCJ reasoned that participation in continuing professional education classes was undertaken at the implied request and encouragement of the employer and was a special requirement that was not part of regular work duties. The WCJ concluded Jose's death was also work related based on the special mission exception to the ordinary commute exclusionary rule.

The majority of commissioners agreed with the WCJ and adopted his report and recommendation on reconsideration as its opinion on decision. The dissenting commissioner did not agree the salary bonus made the trip work related.

A writ of review issued in response to City's petition.

## DISCUSSION

### 1. *Standard of review*

When there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law, and a purported finding of fact on that question is not binding on an appellate court. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864–865 [101 Cal.Rptr. 105, 495 P.2d 433] (*Dimmig*); *Save Mart Stores v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]; *Klee v. Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1523 [260 Cal.Rptr. 217].) Because the issue here is whether the undisputed facts fit any legal theory extending an employer's liability for injuries occurring outside of the workplace, the standard of review is de novo.

### 2. *City's contentions*

City contends the Board improperly found the injury arose out of and in the course of employment by erroneous application of two theories of causation: the commercial traveler doctrine and the special mission exception to the bar against compensation for injuries occurring during an ordinary commute.

### 3. *Industrial causation*

In order to establish liability in an action for workers' compensation, the employee must prove by a preponderance of the evidence that "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (Lab. Code, § 3600, subd. (a)(2).) An off-the-premises injury is within the course of the employment if sustained while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do. (*Pacific Indem. Co. v. Ind. Acc. Com.* (1945) 26 Cal.2d 509, 513 [159 P.2d 625]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2007) § 4.138, p. 4-150.)

#### a. *Commercial Traveler Doctrine Inapplicable*

An employee is regarded as acting within the course of the employment during the entire period of his travel upon his employer's business.

(*Dalgleish v. Holt* (1952) 108 Cal.App.2d 561, 566 [237 P.2d 553].) Even an injury that occurs when the worker is engaged in a personal activity is compensable if the activity was a reasonable expectation of employment.[1] The commercial traveler doctrine has also been extended to an employee's travel on any business matter whether the employee is in sales or not. (*IBM Corp. v. Workers' Comp. Appeals Bd.* (1978) 77 Cal.App.3d 279 [142 Cal.Rptr. 543].) The *IBM Corp. v. Workers' Comp. Appeals Bd.* court found that the death of an IBM employee from an auto accident while visiting his parents on the weekend during a two-week training seminar was not a deviation from employment, especially since the employee had advised his manager that he was going to visit his parents, his manager encouraged him to go, and it was foreseeable that the employee would engage in personal activities on the weekend during the two-week seminar.

Here, the WCJ reasoned that DeLeon was in the course of employment because City encouraged taking CPA courses by paying a bonus and City should have foreseen DeLeon would have to travel to obtain the necessary classes.

■ The WCJ gave undue weight to the bonus. City did not require DeLeon or any accountants to have a CPA license. Traveling to attend a convention for CPA credit was not expressly or impliedly authorized by the employment contract. City did not reimburse CPA coursework but did reimburse the continuing education of other professionals in its employ. DeLeon had never received reimbursement. City did not benefit from CPA licensure and provided the training considered necessary for its accountants. The bonus was a reward for going above and beyond the requirements of the employment.

b. *Not a Special Mission*

■ It is well settled that an employee is ordinarily not entitled to worker's compensation for an injury sustained in going to or departing from work. (*Freire v. Matson Navigation Co.* (1941) 19 Cal.2d 8, 11 [118 P.2d 809].) An exception has been created if the employee was engaged in a

---

[1] In *Wiseman v. Industrial Acc. Com.* (1956) 46 Cal.2d 570, 573–574 [297 P.2d 649], the court held that injuries caused by careless smoking in a hotel room while the employee was on a business trip were incidents of employment. That is, the injuries were "not so remotely connected with the employment that they do not arise out of it," because there is nothing unusual in the fact that a traveling employee may entertain guests who smoke in his hotel room.

special mission for the employer during the commute. The special mission exception requires three factors to be met: (1) the activity is extraordinary in relation to the employee's routine duties, (2) the activity is within the course of the employee's employment, and (3) the activity was undertaken at the express or implied request of the employer and for the employer's benefit. (*C. L. Pharris Sand & Gravel, Inc. v. Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 584, 590 [187 Cal.Rptr. 899] (*C. L. Pharris*).) The special activity need not be required by the employer as a condition of employment and need not be compulsory, but the mission must incidentally or indirectly contribute to the service and benefit of the employer. (*Dimmig, supra,* 6 Cal.3d at p. 868.)

*Dimmig, supra,* 6 Cal.3d 860, is the seminal case in a comparable situation. William Dimmig was killed in an automobile accident while returning home from night classes at a local college. (*Id.* at p. 862.) He was attending college when hired by Memorex, and Memorex had established a policy of encouraging its employees to attend college. (*Ibid.*) Memorex would reimburse the entire cost of tuition and books for courses directly related to the employee's job and half of the cost for other courses. The stated purpose of this program was " 'to encourage Memorex personnel to further their education in order to perform more effectively in their present jobs and increase their qualifications and knowledge for advancement.' " (*Ibid.*) Memorex did not contradict testimony that Dimmig believed a bachelor's degree was required for his continued employment with Memorex. A close friend and his immediate supervisor both testified to Dimmig's expressed belief that the company expected him to complete his education. (*Dimmig,* at p. 863.) Memorex did not so state in his contract of hire but hired him based on his previous job experience and because he was considered "promotable." (*Ibid.*)

The court concluded that Dimmig's attendance at college was a special activity that was not part of his normal routine as a contracts administrator and the trip to get to school was not an ordinary commute but rather a special mission. (*Dimmig, supra,* 6 Cal.3d 860, 869.) The court further found the educational work was undertaken at the request or invitation of Memorex as indicated by the fact that part of his compensation consisted of reimbursement of education expenses through participation in a program designed to encourage employees to increase their effectiveness on the job. (*Ibid.*) The court also noted that the bother and effort of the trip itself is an important part of what the employee is being compensated for. (*Id.* at p. 868.)

Here, unlike Memorex, City did not require accountants to have CPA licenses and did not consider a CPA license necessary to the job. No points were gained toward hiring or promotion if an accountant had a CPA license. City offered what it considered necessary training for its accountants. Some of the training offered by City may have been credited toward a CPA license, but City did not offer sufficient classes for CPA licensure. City only motivated or encouraged CPA licensure as a personal achievement by bonus salary not as an incentive to improve an accountant's ability to do his job. City derived no benefit from the CPA license.

Following *Dimmig*, the Court of Appeal in *C. L. Pharris, supra*, 138 Cal.App.3d 584, focused on *Dimmig*'s comment on travel stated as a requirement that in order for the special mission exception to apply, the travel itself must have significance to the employer. (*Id.* at pp. 592–593.) The facts of *C. L. Pharris* are illuminating and analogous to those present here. A Pharris apprentice equipment operator was injured in an automobile accident on his way to apprenticeship class. (*Id.* at p. 587.) Pharris conceded attendance in the class was within the course of employment pursuant to statute. (Lab. Code, § 3368; *C. L. Pharris*, at p. 589.) However, the court determined that in order to be considered a special mission, the trip itself must have been of special benefit or significance to the employer apart from what the employee was to do at his destination. (138 Cal.App.3d at pp. 592–593.) The court reasoned if employer benefit alone were sufficient to invoke the special errand exception, there would be no need for the additional requirement that the special activity must have been undertaken at the request or invitation of the employer. (*Id.* at p. 593.) In this instance it was found "[T]here was nothing special about [the employee's] trip . . . ; it was simply a normal commute no different in kind than the normal commute to perform the regular duties of his employment, and there was no benefit to the employer from the travel as distinct from the learning experience in class." (*Ibid.*)

City did not request or invite DeLeon to obtain a CPA license. City did not request or invite DeLeon to travel. Not only was the trip not a special mission, travel to attend a class was not an ordinary commute either. The trip was voluntary and personal.

### c. *Personal Self-improvement*

In a similar situation, *City of Los Angeles v. Workers' Comp. Appeals Bd.* (1979) 91 Cal.App.3d 759 [154 Cal.Rptr. 379] determined that a police officer injured while weight lifting at home in preparation for a mandatory physical

fitness test was not injured in the course of employment but was engaged in a personal self-improvement activity. (*Id.* at p. 764.) Passing the test was a requirement of employment and promotion. (*Id.* at p. 761.) There was weight lifting equipment at his station and at the police academy. (*Ibid.*) The department allowed personnel to exercise while off duty but requested that it be done at a police department facility. (*Id.* at p. 762.) The Board had found the testing was motivation to obtain good physical condition and found that obviously to his employer's advantage in the officer's ability to carry out employment duties effectively. (*Ibid.*) The Board further found the officer's superiors were aware that he exercised at home. (*Ibid.*)

■ The Court of Appeal disagreed and found the department did not require that the officer prepare for the test, the activity was not on premises or under departmental control and there was no benefit to the employer except that this particular individual might improve his proficiency. (*City of Los Angeles v. Workers' Comp. Appeals Bd., supra,* 91 Cal.App.3d 759, 764.) Further, the court found incidental knowledge of a supervisor did not make the activity in the course of employment. "When the self-improvement activity is voluntary, off the employer's premises and unregulated, the employer can have little knowledge of the physical risks involved, and no opportunity to minimize or protect the employee against such risks. These circumstances strongly militate in favor of classifying such activities as personal in the absence of some connection with employment other than hoped-for personal improvement." (*Ibid.*) The court distinguished *Dimmig* because Memorex reimbursed more for courses directly related to job duties, the courses were a direct benefit improving the employee's ability to perform assigned tasks more effectively compelling the conclusion that class attendance was contemplated by the contract of employment and arose out of the employment. (*City of Los Angeles,* at pp. 765–766.)

Similarly here, City did not require or recommend obtaining a CPA license, did not reimburse for classes taken to obtain such a license and offered necessary training for its accountants. Less than 13 percent of City's accountants maintained CPA licenses. Clearly, the CPA license was not contemplated by the contract of employment, did not benefit City by making DeLeon perform his assigned tasks more effectively and was appropriately labeled a personal achievement bonus.

## DISPOSITION

The Board's decision is reversed and the order denying reconsideration annulled. The matter is remanded for further proceedings as necessary consistent with this decision. Petitioner's request for a stay of execution of the Board's order is denied.

Croskey, Acting P. J., and Kitching, J., concurred.