[No. B199429. Second Dist., Div. Five. May 16, 2008.]

DAVE TOMLIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and THE CITY OF
BEVERLY HILLS, Respondents.

**COUNSEL**

Adams, Ferrone, Ferrone, Paul F. Ferrone and E. Earl Dove for Petitioner.

John B. Tharp for Respondent The City of Beverly Hills.

No appearance for Respondent Workers' Compensation Appeals Board.

Raymond G. Fortner, Jr., County Counsel, Leah D. Davis, Acting Assistant County Counsel, Derrick M. Au, Principal Deputy County Counsel, and Jason E. Waller, Associate County Counsel, for The County of Los Angeles as Amicus Curiae on behalf of Respondents.

**OPINION**

MOSK, J.—

## INTRODUCTION

Petitioner Dave Tomlin is a member of the City of Beverly Hills Police Department (BHPD) special response team, referred to as SWAT (special weapons and tactics unit). Officer Tomlin sustained an injury while on vacation, training for an upcoming departmental physical fitness test. The workers' compensation administrative law judge (WCJ) denied Officer Tomlin workers' compensation benefits. The Workers' Compensation Appeals Board (WCAB) denied his petition for reconsideration. We granted Officer Tomlin's petition for a writ of review, and we now annul the WCAB's decision denying Officer Tomlin benefits. We hold that Officer Tomlin's physical training injury, even though occurring while on vacation, is compensable as a workers' compensation benefit.

## BACKGROUND

A. *Factual Background*

Officer Tomlin has been employed by the BHPD since December 1994, and has been a member of the BHPD SWAT for seven years. In addition, Officer Tomlin is an instructor in defense tactics, both for SWAT and for other BHPD police officers.

SWAT handles high-risk situations for the BHPD, including riot control and serving warrants in potentially dangerous conditions. Officers assigned to SWAT are on call 24 hours a day, seven days a week. Assignment to SWAT is voluntary. Officers are required to pass a physical fitness test prior to joining SWAT and to pass an annual physical fitness test involving a half-mile run, climbing a wall, and dragging 150 pounds. If an officer fails to qualify for SWAT, he or she is still eligible for employment as an officer with the BHPD. Those officers not in SWAT do not have to pass such periodic physical fitness tests. Officer Tomlin testified that a member of SWAT recently was reprimanded for not being physically fit when the officer failed to climb a wall while on assignment.

The BHPD pays Officer Tomlin to train four days each month, and has sent him to train at Camp Pendleton and out of state. Officer Tomlin otherwise maintains his physical fitness by running, bicycle riding, and weight lifting with other SWAT team members outside of work. He is not paid for these outside workouts. Officer Tomlin has been running three or four times a week for the past 15 years, and covers three to six miles per run. He normally runs while on vacation to maintain his fitness.

In November 2005, a supervisor informed SWAT members that SWAT's annual physical fitness test would be administered in January 2006. Officer Tomlin began a course of fitness training to prepare for the test, and expected to continue training during a two-week vacation he had scheduled from December 26, 2005, to January 11, 2006. Officer Tomlin was not directed by a supervisor to train during his vacation, and he did not inform his supervisors that he would continue training during vacation. He believed, however, that it was expected that he would continue to train for the physical fitness test during his vacation.

On December 30, 2005, while on vacation in Jackson, Wyoming, Officer Tomlin went for a three-mile run. Near the end of the run, he slipped on a sidewalk when rounding a corner. His left foot struck the curb as he fell, and he broke his left ankle. Although there was a reference to the sidewalk being slippery, there is no indication in the record that the injury resulted from the terrain or inclement conditions. The injury required surgery and kept Officer Tomlin out of work until March 16, 2006, when he was able to resume work with modified duties. He later resumed his full duties. He was unable to take the January 2006 physical fitness exam, but took and passed a subsequent test.

B. *Procedural Background*

Officer Tomlin applied for workers' compensation benefits arising out of his running injury. The City of Beverly Hills (the City) denied his claim, asserting that his injury occurred while he was voluntarily participating in an off-duty recreational or athletic activity. (Lab. Code, § 3600, subd. (a)(9).)[1] The WCJ agreed with the City. Applying the two-part test from *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252 [94 Cal.Rptr. 90] (*Ezzy*), the WCJ concluded that Officer Tomlin's belief that the BHPD expected him to jog during his vacation was "not objectively reasonable." Although the BHPD "expected [Officer Tomlin] to maintain a level of fitness

---

[1] All further statutory references are to the Labor Code unless otherwise stated.

to pass an agility exam," the WCJ "doubt[ed] the employer expected the employee to be jogging in strange terrain, hundreds of miles away while on vacation." In his report and recommendation on Officer Tomlin's petition for reconsideration, the WCJ added that, if one accepted Officer Tomlin's position that his injury was work related, "then every SWAT Officer in this State is covered for Workers' Compensation 24 hours a day, any place in the world." The WCAB denied reconsideration, adopting the WCJ's report. Officer Tomlin petitioned this court for a writ of review, which was granted.

## DISCUSSION

### A. *Standard of Review*

"When there is no real dispute as to the facts, the question of whether an injury was suffered in the course of employment is one of law, and a purported finding of fact on that question is not binding on an appellate court. [Citations.]" (*City of Los Angeles v. Workers' Comp. Appeals Bd.* (2007) 157 Cal.App.4th 78, 83 [68 Cal.Rptr.3d 343]; accord, *Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864–865 [101 Cal.Rptr. 105, 495 P.2d 433].) Accordingly, whether it was objectively reasonable for an employee to believe that his or her employer expected participation in an off-duty recreational, social or athletic activity is "a question of law that we determine independently." (*City of Stockton v. Workers' Comp. Appeals Bd.* (2006) 135 Cal.App.4th 1513, 1524 [38 Cal.Rptr.3d 474] (*City of Stockton*).)

### B. *Officer Tomlin's Injury Is Compensable*

■  Section 3600 provides, in relevant part, "(a) Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . , in those cases where the following conditions of compensation concur: [¶] . . . [¶] (9) Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment." (§ 3600, subd. (a)(9).) "[T]he test of 'reasonable expectancy of employment' . . . consists of two elements: (1) whether the employee subjectively believes his or her participation in an activity is expected by the employer, and (2) whether that belief is objectively reasonable." (*Ezzy, supra,* 146 Cal.App.3d at p. 260.) Officer Tomlin testified that he believed that the BHPD expected him to train for the SWAT physical fitness test while on vacation. That testimony was not disputed. In reaching his decision, the WCJ concluded that Officer Tomlin's

belief that he was expected to train was not objectively reasonable. Accordingly, only the second element of the *Ezzy* test is at issue in this case.

In *Wilson v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 902 [239 Cal.Rptr. 719] (*Wilson*), the petitioner, Officer Wilson, was a police officer with the City of Modesto's special emergency reaction team (SERT). (*Id.* at p. 904.) Membership in SERT was voluntary, and officers received no extra pay or benefits for participating in SERT. (*Ibid.*) SERT members were required four times a year to pass physical fitness tests of different kinds— one, for example, involved running two miles, while another involved doing a minimum number of pushups, pullups, and situps. SERT members engaged in monthly on-duty fitness training sessions, but SERT members were not compensated for off-duty fitness training. (*Id.* at p. 907.) After his shift one day, Officer Wilson went running and, while running, injured his left ankle. (*Id.* at p. 904.) He sought workers' compensation for the injury.

The WCJ concluded that, because Wilson had not been ordered to train and was not compensated for off-duty training, his injury was not compensable. The WCAB denied reconsideration. (*Wilson, supra,* 196 Cal.App.3d. at pp. 904, 907.) The Court of Appeal annulled the order denying compensation, holding that Officer Wilson had satisfied both prongs of the *Ezzy* test (*Ezzy, supra,* 146 Cal.App.3d at p. 252) and that his injury was therefore compensable. (*Wilson, supra,* 196 Cal.App.3d at p. 909.) Officer Wilson's testimony that he had been told by supervisors that off-duty conditioning would be necessary and that he knew that he had to train to maintain SERT's physical fitness standards satisfied the first, subjective-belief prong of the *Ezzy* test. (*Id.* at p. 906.) With respect to the second prong, the court held that the facts that Officer Wilson was not compensated for off-duty training and that the City of Modesto did not provide equipment, facilities, or supervision for his off-duty training were not determinative. (*Id.* at p. 907.) SERT was maintained specifically to handle "dangerous criminal situations," requiring SERT members to "maintain a level of physical agility not required of officers on the regular force." (*Id.* at pp. 907–908.) SERT members were required to pass a physical fitness test to qualify for SERT initially, and were required to pass supplemental physical fitness tests each year. (*Id.* at p. 908.) "Hence, physical fitness is indisputably a requirement of membership in that tactical unit . . . ." (*Ibid.*) Further, although participation in SERT was voluntary, the City of Modesto benefitted from maintaining the unit. The court stated that "Clearly, [the] City [of Modesto] received a marked advantage through more thorough and efficient law enforcement." (*Ibid.*) Officer Wilson's off-duty training was therefore a "reasonable expectancy of employment" under section 3600,

former subdivision (a)(8) (now subd. (a)(9)), and his injury was compensable. (*Wilson*, at p. 909.)

Like the officer in *Wilson, supra,* 196 Cal.App.3d 902, Officer Tomlin is a member of a special tactical unit, SWAT, "designed to handle high-risk problems" for the BHPD. Members of SWAT, as the members of SERT in *Wilson*, are required to pass a physical fitness test to qualify for the unit initially, and are required to pass supplemental physical fitness tests each year. As did the members of SERT in *Wilson*, members of SWAT engage in paid, on-duty physical fitness training each month. Officer Tomlin testified that a fellow SWAT member had been reprimanded for not being physically fit enough to perform the job-related task of climbing a wall while on assignment. "Hence, physical fitness is indisputably a requirement of membership in [SWAT]." (*Id.* at p. 908.) As in *Wilson*, assignment to SWAT is voluntary, and Officer Tomlin is not compensated for, or supervised during, his off-duty training, but those facts are not determinative. (*Id.* at p. 907.) Officer Tomlin was injured while training for an imminent, mandatory, employment-related physical fitness test. Officer Tomlin's supervisor had advised the SWAT members that they were required to pass the fitness test. As in *Wilson*, Officer Tomlin's training activities when he was injured were a reasonable expectancy of his employment. (§ 3600, subd. (a)(9).)

This conclusion finds further support in *Kidwell v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1130 [39 Cal.Rptr.2d 540] (*Kidwell*). In that case, the petitioner was a California Highway Patrol (CHP) officer who was injured while off duty practicing a standing long jump[2] in her home. The WCAB denied the officer compensation for her injury. (*Id.* at p. 1132.) On review, the Court of Appeal found *Wilson, supra,* 196 Cal.App.3d 906, dispositive, and characterized the WCAB's position that the injury was not work related as "pure sophistry." (*Kidwell, supra*, 33 Cal.App.4th at p. 1138.) The standing long jump was a required test protocol of the CHP's mandatory annual physical fitness test. (*Id.* at pp. 1132, 1138–1139.) Failure to pass the standing long jump resulted in the officer's becoming ineligible for a salary differential and other administrative benefits, and appeared in the officer's performance evaluation. (*Id.* at p. 1134.) "It is patently unreasonable," the court said, "to determine that the CHP did not expect applicant to practice. Additionally, it is unreasonable to assume that applicant should not have practiced in her home." (*Id.* at p. 1139.) Accordingly, the court held that the officer's injury was compensable. (*Ibid.*) Here, as in *Kidwell*, Officer Tomlin was training for

---

[2] Formerly known as the broad jump.

an imminent, mandatory physical fitness test to be administered by his employer.

The City relies on *City of Stockton, supra,* 135 Cal.App.4th 1513 and *Taylor v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 211 [244 Cal.Rptr. 643] (*Taylor*). Both cases are distinguishable from the instant case. (See *Kidwell, supra,* 33 Cal.App.4th at p. 1137 [distinguishing *Taylor*].) Both *City of Stockton* and *Taylor* involved police officers injured in recreational "pickup" basketball games while off duty. Neither case involved a member of a special tactical unit like SWAT or SERT. (*City of Stockton, supra,* 199 Cal.App.4th at p. 1517; *Taylor, supra,* 199 Cal.App.3d at p. 213.) In both cases, the petitioners relied upon their respective police department's generalized expectation that officers should keep physically fit. In neither case was the officer required to take a formal physical fitness test or given on-duty time for physical fitness training. (*City of Stockton, supra,* 199 Cal.App.4th at p. 1517; *Taylor, supra,* 199 Cal.App.3d at pp. 213–214.) Furthermore, unlike in this case, the police department in *Taylor* previously had issued a general order and posted a notice to officers that injuries sustained in athletic activities that were not expressly approved by the department in advance were not compensable. (*Taylor, supra,* 199 Cal.App.3d at pp. 214–215.) This case involves expected training in anticipation of a scheduled, imminent fitness test. We do not have to decide whether an injury suffered during off duty physical training during other parts of the year to maintain fitness would be compensable.

Amicus curiae County of Los Angeles (the County) relies on *Hermann v. Workers' Compensation Appeals Board* (2000) 65 Cal.Comp.Cases 197. That case too is distinguishable from Officer Tomlin's situation. That case involved a CHP officer who, in the 1980's, failed a physical fitness evaluation and subsequently engaged in a CHP-approved physical fitness program that included up to 40 minutes of running a day. (*Id.* at p. 197.) By 1990, the officer had become such an avid runner that he was training 50 to 60 hours a week to train for "ultra" marathons of up to 100 miles. (*Ibid.*) He suffered a cumulative stress injury to his right foot and right big toe that was aggravated by his running. (*Ibid.*) The WCJ in that case concluded that the injury was not compensable because " 'the degree of recreational activity was far out from the realm of required work activity, and . . . stress put on the toe by this recreational activity dwarfed any work component.' " (*Id.* at p. 198.) The WCAB agreed, finding the officer's training 50 to 60 hours a week for "ultra" marathons was "well in excess" of the requirements imposed by the CHP, which limited the officer's required running to 40 minutes a day. (*Ibid.*)

Unlike in *Hermann, supra,* 65 Cal.Comp.Cases 197, there is no evidence in this case that Officer Tomlin's fitness regimen was grossly disproportionate to

the training necessary to pass the mandatory physical fitness test or otherwise to meet the fitness requirements of his employment. Also, unlike the injury in *Hermann*, Officer Tomlin's injury was not a cumulative stress injury caused or aggravated by running long distances or over a long period of time. Officer Tomlin was injured when he slipped on a sidewalk near the end of a three-mile run, while training specifically for an impending employment-related physical fitness test.

Both the City and the County emphasize that Officer Tomlin was on vacation when he was injured. Neither the City nor the County, however, cites any authority holding that this fact is determinative. It should make little difference whether Officer Tomlin was running while off duty after his shift in Beverly Hills or running off duty while on vacation in Jackson, Wyoming. In either case, he was engaged in training and maintaining fitness for an imminent, employer-mandated physical fitness test. If he did not continue his physical training during this period, he might not have been able to fulfill the expectation of the City to be physically fit.

Both the City and the County emphasize the facts that Officer Tomlin apparently enjoyed running; he ran to keep fit prior to joining the BHPD; and he testified that he normally ran when on vacation. These facts are not conclusive. The issue is not whether Officer Tomlin enjoyed running, or whether Officer Tomlin would be covered by workers' compensation if he had been injured while running solely for pleasure. The issue in this case is whether Officer Tomlin's running at the time he was injured was a reasonable expectancy of his employment. (§ 3600, subd. (a)(9).) Officer Tomlin testified that he was injured while running to train for an employer-mandated physical fitness test. That testimony was uncontroverted. As Officer Tomlin is required by his employer to be fit and to pass annual mandatory fitness tests, physical fitness training, whether on vacation or not, is a reasonable expectancy of Officer Tomlin's employment. To cease training while on vacation would be inconsistent with the BHPD's requirement that Officer Tomlin remain fit enough to pass the physical fitness test.

■ The WCJ referred to Officer Tomlin's running on a "strange terrain" "hundreds of miles away" and expressed concern that affording Officer Tomlin coverage for his injury in this case means that "every SWAT Officer in this State is covered for Workers' Compensation 24 hours a day, any place in the world." If a SWAT officer is injured in a work-related activity, there is no reason why it should matter for purposes of section 3600, subdivision (a)(9) where the officer is or what time of day it is when the injury occurs. The relevant inquiry under section 3600, subdivision (a)(9) is whether the activity

is a reasonable expectancy of the officer's employment. There is no indication in the record that Officer Tomlin was jogging on a terrain or in conditions that were unreasonably dangerous for jogging, and the City does not argue that Officer Tomlin is ineligible for benefits on that basis. One can be injured jogging at any location—the officer in *Wilson, supra,* 196 Cal.App.3d 902, for example, was injured while jogging on a junior college track. (*Id.* at p. 904.) Thus, neither the location of the injury nor weather conditions at the time have any relevance to this case. We do not decide whether Officer Tomlin's injury would be compensable had he been injured while engaged in other types of activities or under different conditions.

■ In this case, Officer Tomlin was required by his employer to maintain physical fitness and pass annual, mandatory physical fitness tests. He was injured when he slipped on a sidewalk while on a three-mile training run for his employer-mandated physical fitness test. Under the facts of this case, Officer Tomlin's injury is compensable pursuant to section 3600, subdivision (a)(9).

### DISPOSITION

The WCAB's decision is annulled and the matter remanded to the WCAB for proceedings consistent with this opinion.

Armstrong, Acting P. J., concurred.

**KRIEGLER, J.,** Dissenting.—The management of the City of Beverly Hills (the City) will undoubtedly be stunned to discover that it is responsible under the workers' compensation law for an injury suffered by an off-duty police officer engaging in his routine recreational activity of running during a personal vacation in the dead of winter in the State of Wyoming, 1,000 miles from the officer's place of employment. The City did nothing to lead Officer Dave Tomlin to objectively believe that running while on vacation in Wyoming in December 2005 was an expectancy of his employment. Because Officer Tomlin failed to satisfy the second prong of the "reasonable expectancy" test set forth in *Ezzy v. Workers' Comp. Appeals Bd.* (1983) 146 Cal.App.3d 252, 259–260 [194 Cal.Rptr. 90] (*Ezzy*), I respectfully dissent from the majority's reversal of the denial of compensation to Officer Tomlin by the Workers' Compensation Appeals Board.

There is nothing in the record to show that the City had any notice that Officer Tomlin intended to run, on a slippery sidewalk, in the winter in Wyoming. Certainly there is nothing in the record before this court to even

remotely suggest that Officer Tomlin could entertain an objectively reasonable belief that running under the conditions in this case was expected of his employment. To hold the City responsible under the workers' compensation law for Officer Tomlin's injury runs afoul of the legislative intent behind Labor Code section 3600, subdivision (a)(9).[1]

An employee "acting within the course of his or her employment" who is injured while "performing service growing out of and incidental to his or her employment," is entitled to compensation under the workers' compensation law without regard to negligence. (§ 3600, subd. (a)(2).) "Stated conversely, no recovery may be had where the injury arises from voluntary participation in athletic activities," subject to exceptions set forth in section 3600, subdivision (a)(9). (*Ezzy, supra,* 146 Cal.App.3d at p. 259.) "Where athletic activities are either a 'reasonable expectancy of, or are expressly or impliedly required by, the employment' injuries arising therefrom *are compensable.*" (*Ibid.,* quoting § 3600, former subd. (a)(8), now § 3600 subd. (a)(9).) The purpose of section 3600, subdivision (a)(9), was to draw a "brighter line delimiting compensability by replacing the general forseeability test with one of 'reasonable expectancy' of employment." (*Ezzy, supra,* 146 Cal.App.3d at p. 261.)

"In applying the reasonable expectancy test, we first consider whether the employee subjectively believed that participation in the activity was expected by the employer. [Citation.] This issue is a question of fact, which we review under the substantial evidence rule. [Citation.] [¶] We then determine whether the employee's belief was objectively reasonable. [Citation.] This issue is a question of law that we determine independently. [Citation.]" (*City of Stockton v. Workers' Comp. Appeals Bd.* (2006) 135 Cal.App.4th 1513, 1524 [38 Cal.Rptr.3d 474] (*City of Stockton*).)

The majority's holding is at odds with the legislative intent of section 3600, subdivision (a)(9), which is "to limit, rather than to expand, the scope of liability that an excessively liberal application of the basic test might support. [Citations.]" (*City of Stockton, supra,* 135 Cal.App.4th at p. 1524.) Officer Tomlin suffered his ankle injury during the same routine recreational activity he has engaged in for 15 years. Not only was he engaging in a routine activity, Officer Tomlin was 1,000 miles from the City of Beverly Hills, running in the winter in Wyoming, when he fell on a slippery sidewalk. The City provides paid training for Officer Tomlin four days per month, in addition to sending him to other training events. As a matter of law, it is not

---

[1] Statutory references are to the Labor Code.

objectively reasonable to conclude that this specific form of recreational running was expected by his employer.

Despite the majority's claim to the contrary, the logical extension of its opinion is that injuries suffered during other recreational activities engaged in while on vacation by a SWAT officer would also be compensable under the workers' compensation law, if related in some way to the fitness test requiring proficiency in running, climbing, and dragging dead weight. Under the majority's reasoning, injuries suffered during a myriad of recreational activities—including snow skiing, mountain biking, and mountain climbing— would necessarily be covered, as each would assist a SWAT officer in passing the fitness test. That fact alone, however, is "not sufficient for worker's compensation coverage since that would impose virtually limitless liability for any recreational or athletic activity in which the employee chooses to participate—a result that would run afoul of the limitation set forth in . . . section 3600, subdivision (a)." (*City of Stockton, supra,* 135 Cal.App.4th at p. 1516.)

The Workers' Compensation Appeals Board's conclusions on questions of law are certainly not binding on this court. (*City of Long Beach v. Workers' Comp. Appeals Bd.* (2005) 126 Cal.App.4th 298, 316, fn. 5 [23 Cal.Rptr.3d 782]; *Kuykendall v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 396, 402 [94 Cal.Rptr.2d 130].) But in this case, the decision of the worker's compensation judge was eminently sound. The workers' compensation judge found that, if it were objectively reasonable for Officer Tomlin to believe he was expected to jog in strange terrain while on vacation in the middle of winter in Wyoming, then every SWAT officer would be covered 24 hours a day, no matter where the officer was located. Such a result is manifestly inconsistent with the legislative intent of section 3600. "To hold otherwise would in effect render the employer potentially liable for any injury sustained in any recreational or athletic activity if the activity contributed to the employee's physical fitness. Such broad potential liability would be contrary to the legislative intent of section 3600, subdivision (a)(9)." (*Taylor v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 211, 216 [244 Cal.Rptr. 643].)

*Wilson v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 902 [239 Cal.Rptr. 719] relied upon by the majority, is readily distinguishable on its facts. In *Wilson,* the injured officer finished his shift and drove to a local community college to run on the track, where he injured his ankle. "The legal question here, as in *Ezzy* v. *Workers' Comp. Appeals Bd.[, supra,]* 146 Cal.App.3d 252 . . . , is whether petitioner's participation in the off-duty athletic activity was a reasonable expectancy of his employment by City." (*Wilson v. Workers' Comp. Appeals Bd., supra,* 196 Cal.App.3d at p. 905.)

*Wilson* concluded it was. However, whatever expectation the City had that SWAT officers maintain a specified level of fitness does not mean that an injury suffered during a voluntary recreational activity while on vacation in another state is compensable. The injury suffered by Officer Tomlin is beyond the scope of section 3600, subdivision (a)(9).

I would affirm the order.

The petition of respondent The City of Beverly Hills for review by the Supreme Court was denied July 30, 2008, S164647. George, C. J., did not participate therein.